David FARLOW, et al., Plaintiffs–Appellants,

v.

PEAT, MARWICK, MITCHELL & CO., Defendant–Appellee.

No. 89–6310.

United States Court of Appeals, Tenth Circuit.

Feb. 13, 1992.

---

Michael J. Freed of Much Shelist Freed Denenberg Ament & Eiger, Chicago, Ill. (Anthony C. Valiulis, Stewart M. Weltman, Christopher J. Stuart, Much Shelist Freed Denenberg Ament & Eiger, P.C., Chicago, Ill., Ronald E. Stakem, Clark, Stakem, Pherigo & Douglas, Oklahoma City, Okl., Roger B. Greenberg, Richie & Greenberg, Houston, Tex., Jack S. Dawson, Janice M. Dansby, Miller, Dollarhide, Dawson & Shaw, Oklahoma City, Okl., with him on the briefs) for plaintiffs-appellants.

Jeffrey R. Tone of Sidley & Austin, Chicago, Ill. (J. William Conger, James C. Prince, Hartzog Conger Cason & Hargis, Oklahoma City, Okl., of counsel, Robert D. McLean, Frank B. Vanker, Sidley & Austin, Chicago, Ill., Leonard P. Novello, General Counsel, Anthony J. Costantini, Associate General Counsel, KPMG Peat Marwick, New York City, with him on the brief), for defendant-appellee.

Before McKAY and MOORE, Circuit Judges, and BROWN, Senior District Judge.*

WESLEY E. BROWN, Senior District Judge.

This appeal arises from plaintiff-appellants' complaint against defendant-appellee accounting firm, Peat, Marwick, Mitchell & Company (hereafter Peat Marwick), and other defendants, based upon the offer and sale of interests in over fifty limited partnerships by Patrick Powers, and his related entities during a period of August, 1979 until March 4, 1986, the date on which plaintiffs' original complaint was filed.[1]

Patrick Powers and his company, Pepco, Inc., were never named as defendants in the action. As the case has progressed through the district court to this appeal, Peat Marwick became the sole defendant appellant before us, and all issues on appeal are limited to questions of the effectiveness of plaintiffs' Second Amended Complaint, as it relates to Peat Marwick. In particular, our review is limited to the question of the sufficiency of that complaint in connection with the elements of a claim under Section 10(b) of the Securities Exchange Act of 1934, 15 U.S.C. Sec. 78j(b) and Securities and Exchange Commission Rule 10b–5, 17 C.F.R. 240–10b–5, and whether plaintiffs have pled a claim under the Racketeer Influenced and Corrupt Organizations Act (RICO) 18 U.S.C. Sec. 1961 et seq.[2]

On December 10, 1986, Judge Russell of the district court found that plaintiffs' Amended Complaint failed to plead Section 10b fraud with particularity since plaintiffs had failed to specify those plaintiffs who had dealt directly with Peat Marwick, and the names of those persons from whom plaintiffs had purchased interests, and had failed to specify the occasions on which alleged misrepresentations were made, and how they were directed to plaintiffs. Plaintiffs' allegations of RICO violations were likewise found to be lacking in specifics, and all claims against Peat Marwick in the Amended Complaint were dismissed, *without prejudice.* Plaintiffs were granted leave to amend their complaint and to comply with an attached order specifying the allegations necessary to establish a RICO claim.[3]

On January 12, 1987, plaintiffs filed their Second Amended Complaint. Upon motion of Peat Marwick, Judge Phillips [4] dismissed this Second Amended Complaint, with prejudice, upon a finding that plaintiffs had failed to state a claim under Section 10(b) of the Securities Exchange Act and had failed to comply with Judge Russell's prior order requiring plaintiffs to comply with Rule 9(b), Federal Rules of Civil Procedure, by giving specific details of the alleged RICO violations. *Farlow v. Peat Marwick Mitchell & Co.,* 666 F.Supp. 1500 (W.D.Okl. 1987).[5]

Just prior to the second dismissal of their complaint, plaintiffs filed a Motion for Leave to File Amendment to the Second

---

* Honorable Wesley E. Brown, United States Senior District Judge for the District of Kansas, sitting by designation.

1. Order of Judge David L. Russell, December 10, 1986 (Vol. I, Record, Doc. 68). The "related entities" mentioned were firms allegedly controlled by Patrick Powers and/or Pepco, Inc.

   Marsha Powers was named as a defendant. It was alleged that she was involved in the day-to-day operations of Pepco, and acted as the internal auditor for that company.

   In a Second Amended Complaint, the Westinghouse Credit Corporation was added as a defendant. By stipulation and voluntary dismissal, Marsha Powers and Westinghouse have been dismissed from the case.

2. Plaintiffs' original claims included alleged violations of Section 12(2) of the Securities Act of

1933, 15 U.S.C. Sec. 771(2), Section 17(a) of that Act,. 15 U.S.C. Sec. 77q, violations of Oklahoma Stat. Title 71, Sec. 408(a)(2), and common law fraud. These claims are not involved in this appeal.

3. In connection with this dismissal without prejudice, Judge Russell issued a six-page order which set out seventeen items to be pled specifically.

4. The case was transferred from Judge Russell to Judge Phillips.

5. The court also ruled that plaintiffs failed to state claims under §§ 12(2) and 17(a) of the Securities Act of 1933. These rulings were not appealed.

Amended Complaint. Leave to amend, and a Motion to Reconsider the order of dismissal were denied. (Vol. I, Record Docs. 127, 147, 163.)

For the reasons hereafter discussed, we find that plaintiffs claims were properly dismissed with prejudice and that the denial of leave to amend was not an abuse of discretion.

In the Second Amended Complaint, which was filed in response to Judge Russell's dismissal without prejudice, plaintiffs claimed that Pepco and its president, Powers, defrauded investors in 58 limited partnerships offered between 1979 and 1983 by making numerous misrepresentations in partnership offering memoranda and other materials while the property partnerships were "worthless shells," without value.[6]

Plaintiffs claim that Peat Marwick became "involved in the fraud" on April 1, 1981, when it agreed to certify Pepco's financial statements, which it knew to be "materially false and inaccurate." Peat Marwick audited and certified Pepco interim statements as of April 30, 1981, and year-end statements for 1981, 1982, and 1983.[7]

Without mentioning any specific financial statement, plaintiffs alleged that Peat Marwick knew that the statements grossly inflated assets and net worth, that the firm failed to disclose contingent liabilities arising from securities violations, concealed the fact that operations were "financially unsound," and improperly used the equity method of accounting to reflect Pepco's relationship to the limited partnerships.

The only specific allegations of misrepresentations in statements were for those of December 31, 1982 and 1983, wherein plaintiffs claim that Peat Marwick failed to reveal that assets consisted of "unsecured and worthless" notes receivable and investments in Powers' business entities. It is also alleged that these statements failed to

disclose that Powers owed money to his corporation and that he inflated the value of Pepco assets.

The complaint fails to make any specific allegation that Peat Marwick participated in Powers' misrepresentations—the claim is that Peat Marwick knew "at the time PMM certified" the Pepco statements that Powers intended to provide them to prospective investors. However in this respect, the only particular partnership memorandum alleged to include Pepco financial statements was the memo for the Southroads Mall Village partnership, which contained only the statement for December 31, 1981. Some newsletters (not identified) were sent to investors (not identified) after they had invested and the complaint alleges that a July 12, 1982, newsletter included a financial statement for year-end 1981. It is claimed that these newsletters "induced" future investments, but no specific facts are provided concerning what these future investments might have been, who made them, or what newsletters contained information concerning these investments. The complaint charges that Powers, with Peat Marwick's knowledge and consent, sent copies of financial reports to prospective investors; but, again, no facts are alleged indicating which financial statements were sent to whom or in what context.

In the December 10, 1986 dismissal order, Judge Russell ruled that plaintiffs must specify which financial statements appeared in which offering circular and what was fraudulent about those statements. In the Second Amended Complaint, plaintiffs identified only one offering circular, for Southroads Mall Village, which contained Pepco financial statements, but they did not allege any specific problem with those financial statements. Judge Phillips found that the redrafted allegations of the Second Amended Complaint did not satisfy the requirements of Rule 9(b) and dismissed the

---

**6.** The pleadings reflect that the Oklahoma Securities Commission began an investigation of Powers and Pepco in 1985, and a court order was secured requiring Pepco to buy back investments made in the partnerships. Pepco was unable to honor such rights and was placed into receivership and bankruptcy.

**7.** Pepco was formed on March 9, 1981, and the April 30, 1981 financial statement covered transactions in the new company for less than two months.

complaint with prejudice. In particular it was noted that plaintiffs claimed defects in only the 1982 and 1983 statements but not with respect to any 1981 statement.

■ Section 10(b) of the Securities Exchange Act of 1934, 15 U.S.C.A. Sec. 78j(b) provides that it is unlawful:

To use or employ, in connection with the purchase or sale of any security ... any manipulative or deceptive device or contrivance in contravention of such rules and regulations as the Commission may prescribe as necessary or appropriate in the public interest or for the protection of investors.

Rule 10b(5), 17 C.F.R. 240–10b–5, covering the "Employment of manipulative and deceptive devices," provides in pertinent part that:

It shall be unlawful for any person, directly or indirectly, by the use of any means or instrumentality of interstate commerce, or of the mails, or of any facility of any national securities exchange,

(a) To employ any device, scheme, or artifice to defraud,

(b) To make any untrue statement of a material fact or to omit to state a material fact necessary in order to make the statements made, in the light of the circumstances under which they were made, not misleading, or

(c) To engage in any act, practice, or course of business which operates or would operate as a fraud or deceit upon any person,

in connection with the purchase or sale of any security.

The provisions of Section 10(b), Rule 10b–5, are to be "read flexibly, not technically and restrictively." *Windon Third Oil and Gas v. Federal Deposit Ins.*, 805 F.2d 342, 346 (10th Cir.1986), *cert. denied* 480 U.S. 947, 107 S.Ct. 1605, 94 L.Ed.2d 791.

■ An action for damages under Section 10(b) may not be maintained in the absence of allegations of fraud, with intent to deceive, manipulate or defraud on the part of the defendant. An element of scienter must be present, and liability may not be imposed for simple negligent conduct. *Ernst & Ernst v. Hochfelder*, 425 U.S. 185, 96 S.Ct. 1375, 47 L.Ed.2d 668, *rehearing denied*, 425 U.S. 986, 96 S.Ct. 2194, 48 L.Ed.2d 811 (1976).

■ In order to establish *primary* liability under Section 10(b), a party must allege and prove facts showing that the conduct complained of occurred "in connection with" the purchase or sale of a security— that the actor made an untrue statement of a material fact, or failed to state a material fact, that in so doing, the party acted knowingly with intent to deceive or defraud, and that plaintiff relied on the misrepresentations, and sustained damages as a proximate result of the misrepresentation. *See Stevens v. Vowell*, 343 F.2d 374 (10th Cir. 1965).

■ In order to establish *secondary* liability under Section 10(b), the facts must show fraud in the sale of securities by the primary violator, knowledge of that fraud by an aider and abettor, and "substantial assistance" by the aider and abettor. *See Barker v. Henderson, Franklin, Starnes & Holt*, 797 F.2d 490, 496 (7th Cir.1986).

■ As noted, plaintiffs' claims against Peat Marwick were dismissed for failure to comply with Rule 9(b), Fed.R.Civ.P. That rule provides that "(i)n all averments of fraud or mistake, the circumstances constituting fraud or mistake shall be stated with particularity."

The courts have strictly enforced Rule 9(b) in claims under the securities law, requiring detailed statements of the specific conduct which allegedly violated the statutes in question.

In *Sears v. Likens*, 912 F.2d 889, 893 (7th Cir.1990) the court found that a complaint under the Securities Exchange Act of 1934 and Rule 10b–5 was properly dismissed under Rule 9(b) since it failed to state "in any detail *what* misrepresentations were made by the defendant, *to whom* these misrepresentations were made, *when* these misrepresentations were made, or *how* these misrepresentations furthered the alleged fraudulent scheme." 912 F.2d at 889. In *Ross v. Bolton*, 904 F.2d 819 (2d Cir.1990),

the district court dismissed a securities complaint against Bear Stearns, the clearing agent who worked with the defendant broker, because of failure to plead fraud with particularity under Rule 9(b) Fed. R.Civ.P. In affirming the dismissal, the Second Circuit discussed the purpose of Rule 9(b) in this manner:

> The primary purpose of Rule 9(b) is to afford defendant fair notice of the plaintiff's claim and the factual ground upon which it is based ... Rule 9(b) also safeguards defendant's reputation and goodwill from improvident charges of wrongdoing ... and it serves to inhibit the institution of strike suits.... We recognize and rigorously enforce these salutary purposes of Rule 9(b). (904 F.2d at 823). (Citations omitted)

In discussing the status of Bear Stearns, as an alleged aider and abettor as opposed to a primary violator, the court noted that the claimant must allege that Bear Stearns acted with scienter and actual intent:

> ... to state a claim against Bear Stearns, as an aider and abettor of the Bolton defendants, Ross must allege, in addition to the securities law violation by the primary wrongdoer, that Bear Stearns knew of the wrong and substantially assisted in perpetrating it ... despite allegations of Bear Stearns' reckless disregard of the facts—and even assuming for present purposes that the requisite standard of recklessness has been adequately pleaded—absent a fiduciary duty owing from Bear Stearns to Ross there is no aiding and abetting liability ... if there is no fiduciary duty ... the *scienter* requirement increases, so that appellants need to show that Bear Stearns acted with actual intent. (904 F.2d at 824).

In *Wayne Inv. v. Gulf Oil Corp.*, 739 F.2d 11 (1st Cir.1984), plaintiff brought action under Section 10b with allegations of fraudulent, false, and misleading statements in connection with a tender offer. As a part of the fraud, plaintiff relied upon false statements made in a press release,

but neither the complaint nor plaintiff's affidavit set out the context in which plaintiff "read of" the press release, nor did plaintiff identify the articles he read containing allegedly misleading information. The court found that the action was properly dismissed for failure to plead fraud with particularity as required by Rule 9(b) Fed. R.Civ.P., noting that plaintiff had failed to provide information regarding "the time, place and content of an alleged false representation." 739 F.2d at p. 14.

While no specific complaint was made concerning the 1981 financial statements, these were the only statements available when 36 of the 58 limited partnerships were closed by December 31, 1982.[8]

A similar situation appears with reference to the 1983 year-end financial statement—this was issued after all of the partnerships had been closed and could not have been the basis for reliance in the purchase of securities. *See Latigo Ventures v. Laventhol & Horwath*, 876 F.2d 1322, 1326 (7th Cir.1989) where the audit report was issued two months *after* plaintiffs had made their investment, and *LHLC Corp. v. Cluett, Peabody & Co., Inc.*, 842 F.2d 928 (7th Cir.1988), *cert. den.* 488 U.S. 926, 109 S.Ct. 311, 102 L.Ed.2d 329, where the accountant's letter, containing alleged misstatements concerning the value of inventory, was not received by the buyer until after the sale closed.

The trial court correctly found that no facts were alleged which would indicate that Peat Marwick acted "in connection with" the sale of the securities. The only substance of the Section 10(b) allegations was that "Peat Marwick *omitted and failed to disclose* the fraudulent activity of Powers in certifying the various financial statements of Pepco *without qualification.*" 666 F.Supp. 1500 at 1505. (Emphasis of the court)

In order to satisfy the requirement of "knowledge" as an aider and abettor under Section 10(b), Rule 10b(5), the district court, relying on *Barker v. Henderson, Franklin Starnes & Holt, supra*, 797 F.2d

---

**8.** According to the complaint, plaintiffs even purport to represent investors in 15 partnerships which were formed *before* Pepco was organized. *Ibid.*

490, found that plaintiffs would have to plead facts which would support a conclusion that Peat Marwick had "thrown in" with Powers, the primary violator.

In *Barker* purchasers of bonds and notes of a retirement village foundation filed an action for alleged securities law violations against law and accounting firms who rendered services to the foundation. The court there concluded that neither the lawyers nor the accountants had a duty "to tattle on their clients" in the absence of some duty to disclose.

In *Windon Third Oil and Gas v. Federal Deposit Ins., supra,* 805 F.2d 342, investors in limited partnerships obtained funds from the Penn Square Bank. In a brief telephone conversation, a member of the Peat Marwick accounting firm which audited Penn Square, provided information to one of the investors about the status of the operating partner in the limited partnerships.

On appeal this circuit held that Peat Marwick had no duty to reveal information, stating at p. 347, 805 F.2d 342:

> The failure to disclose material information is actionable only "when (one) is under a duty to do so. And the duty to disclose arises when one party has information that the other party is entitled to know *because of* a fiduciary or other similar relation of trust and confidence between them." *Chiarella v. United States,* 445 U.S. 222, 228 [100 S.Ct. 1108, 1114, 63 L.Ed.2d 348].... A duty arises from the relationship between the parties not merely because one party has an ability to acquire information ... Without a duty to disclose, silence cannot be made fraudulent.

See also, *Di Leo v. Ernst & Young,* 901 F.2d 624 (7th Cir.1990), and *Latigo Ventures v. Laventhol & Horwath, supra,* 876 F.2d at 1326–1327:

> All that remains is a claim that accountants who participate in or even are merely aware of a fraud by a client have a duty under Rule 10b–5 and the common

law of Illinois to broadcast that fraud to anyone who might buy the client's stock. This theory of whistleblower liability or financial good Samaritanism severs accountants' liability from the making of representations. Under it (the accountants) would be liable to the plaintiffs even if it had never issued an audit report. Rule 10b–5 does not reach frauds that involve no misrepresentations or misleading omissions ... and the particular theory pressed here has no basis that we know of in the common law. (Citation omitted)

> \*    \*    \*    \*    \*    \*

> It is not the law that whenever an accountant discovers that his client is in financial trouble he must blow the whistle on the client for the protection of investors—so that (the accountants) should have taken out an advertisement in the *Wall Street Journal* stating that it had just discovered that its client ... was losing money, rather than waiting to report this in the next audit report. That would be an extreme theory of accountants' liability, and it is one we decline to embrace as an interpretation of the common law of Illinois, having in previous cases specifically rejected it as a possible theory of Rule 10b–5 aider and abettor liability. (citing *Barker v. Henderson, Franklin, Starnes & Holt, supra,* 797 F.2d 490, and *LHLC Corp. v. Cluett, Peabody & Co., supra,* 842 F.2d at 932–33).[9]

In this action, Peat Marwick was acting as the auditor for Pepco, and not as auditor for the limited partnerships, which were the investment vehicles for these plaintiffs. The difference in approach may be illustrated by the situation present in *Frymire v. Peat, Marwick, Mitchell & Co.,* 657 F.Supp. 889 (N.D.Ill.1987), where the plaintiffs made claim against Peat Marwick, as *stockholders* of Pepco, Inc. In a ruling upon Peat Marwick's motion to dismiss, the Illinois district court found that plaintiffs there had sufficiently pleaded a Section

---

**9.** "When the problem consists in keeping silence while the primary violator carries out the fraud, the plaintiff must show that the silent person had a legal duty to speak" *LHLC Corp. v. Cluett, Peabody & Co., Inc., supra,* 842 F.2d at 932.

10(b) action against the accounting firm. The Illinois action is readily distinguishable from the facts in this case.

The district court aptly summed up the substance of plaintiffs' Section 10(b) claims in this manner:

> With regard to the second series of alleged violations against Peat, Marwick, Mitchell, and specifically the 10(b) and 10(b)(5) allegations involving fraud in connection with the sale of securities, the Court has a duty to look beyond the recitals and the allegations that appear in the complaint and to actually look to the substance of the allegations. And despite some of the conclusory labels that have been placed on those allegations, the conclusory allegations of direct misrepresentation, the Court believes, are simply without supporting facts in terms of allegations. In looking at the totality of the complaint in this matter, the Court is of the very strong opinion that the substance of the allegations against Peat, Marwick, Mitchell are simply a failure to disclose by Peat, Marwick, Mitchell.
>
> There are no allegations that Peat, Marwick, Mitchell received proceeds from the sale or profits as a result of this scheme to defraud, received fees for rendering advice in connection with the actual sales, reviewed or approved any of the materials used to sell the partnerships other than the financial statements that it certified. (Docket 124, Transcript, July 17, 1987, pp. 5–6) [10]

■ Plaintiffs' RICO claim was properly dismissed. In Count I of the Second Amended Complaint, plaintiffs alleged that Peat Marwick was liable because it conspired with Powers to violate the provisions of 18 U.S.C.A. Secs. 1962(a) and (c), and because it aided and abetted Powers in his violations. Section 1962(a) provides in pertinent part that:

> (a) It shall be unlawful for any person who has received any income derived, directly or indirectly, from a pattern of racketeering activity or through collection of an unlawful debt ... to use or invest, directly or indirectly, any part of such income in acquisition of any interest in, or the establishment or operation of, any enterprise which is engaged in, or the activities of which affect, interstate or foreign commerce.

Section 1962(c) provides in pertinent part that:

> It shall be unlawful for any person employed by or associated with any enterprise engaged in, or the activities of which affect, interstate or foreign commerce, to conduct or participate, directly or indirectly, in the conduct of such enterprise's affairs through a pattern of racketeering or collection of unlawful debt.

Section 1962(d) provides that:

> It shall be unlawful for any person to conspire to violate any of the provisions of subsections (a), (b), or (c) of this section.

The term "racketeering activity" includes any act involving mail fraud or fraud in the sale of securities, and the term "pattern of racketeering" requires at least two acts of racketeering activity. 18 U.S.C. Sec. 1961(1).

■ Under Rule 9(b), plaintiffs must sufficiently allege each element of a RICO violation and its predicate acts of racketeering with particularity, a requirement justified by the "threat of treble damages and injury to reputation." *Cayman Exploration Corp. v. United Gas Pipe Line*, 873 F.2d 1357, 1362 (10th Cir.1989).

The trial court correctly found that the plaintiffs "wholly failed to allege any violation of RICO with the particularity required by Rule 9(b)."

While plaintiffs claimed mail fraud as one of the predicate acts to establish a "pattern of racketeering," they failed to plead specific mail fraud violations. Thus, Paragraph 100 of Count I of the Second Amended Complaint contained these allegations:

---

**10.** Plaintiffs moved to amend their complaint to include an interoffice memo in which Peat Marwick agreed to discount its 1983 audit fee to Pepco for business purposes. This is not sufficient to establish that Peat Marwick "joined in" with Powers' fraudulent schemes.

100. In furtherance of the scheme, the co-conspirators frequently used the mails making their actions indictable under federal mail fraud statutes (18 U.S.C. Sections 1341) For example, on many occasions during the period January 1979 to 1985, Powers mailed to class members false and misleading offering memoranda, financial statements, and investor newsletters. Without discovery, plaintiffs cannot determine the exact dates of each of these mailings.

The district court appropriately noted that a plaintiff alleging fraud must know what his claim is when he files it:

> The Second Circuit has pointed out that "(a) complaint alleging fraud should be filed only after a wrong is reasonably believed to have occurred; it should seek to redress a wrong, not to find one." *In re Tesoro Petroleum*, 467 F.Supp. 227 (W.D.Tex.1979), citing *Segal v. Gordon*, 467 F.2d 602, 607–08 (2d Cir.1972). The *Tesoro* court further stated that a plaintiff in a non–9(b) suit can sue now and discover later what his claim is, but a Rule 9(b) claimant must know what his claim is when he files it. *Id.* at 250. (666 F.Supp. at 1509).

Plaintiffs have failed to plead mail fraud with particularity, and, as discussed above, they have also failed to sufficiently plead securities law violations, both allegations being the necessary predicates to their RICO claim.[11]

■ Plaintiffs have had several opportunities to state their claims against Peat Marwick. They did not, or could not comply with instructions as to how they must plead their claims. Judge Phillips correctly found that plaintiffs had failed to plead fraud with particularity as required by Rule 9(b) of the Fed.R.Civ.P., that they failed to state a claim under RICO, and that the proposed amendments to the complaint would have added nothing of sub-

stance to that complaint. The denial of leave to amend was not an abuse of discretion. ·

The orders of the district court dismissing the second amended complaint with prejudice, denying leave to file an amendment to that complaint, denying the motion for reconsideration, and denying leave to file a second amendment to the second amended complaint are AFFIRMED.

---

11. In the Illinois *Frymire* case, discussed supra, 657 F.Supp. 889, the court dismissed the RICO claim for failing to plead conspiracy with particularity, stating that "(a) complaint which merely implies, with the conclusory allegation of a conspiracy, that a defendant is responsible for someone else's fraudulent acts is insufficient", and that "(a)lleging a conspiracy to violate RICO requires particularity for what can be best described analytically as two agreements: one to a pattern of racketeering activity as defined by the statute, and another to the statutorily proscribed conduct." 657 F.Supp. at pp. 895 and 896.