ARENA LAND & INVESTMENT CO., INC., a Utah corporation, Dave McGee, John Satterfield, Jean Pinto, Gary Blatter, Brian Johnson, Mike Stevens, Doug Christiansen, Ray Lowe, William J. Pappas, Bart Jackson, Lisa Jackson, Sherrie Pappas, James Friedman, Neil Zais, and Kenneth R. McClain, individually and on behalf of the class of all persons similarly situated, Plaintiffs,

v.

Neuman C. PETTY, Robert M. Bryson, Nupetco Associates, a general partnership, Ralph C. Petty, Wayne G. Petty, Brent G. Petty, Keith A. Petty, Albert S. Petty, Ireva G. Petty, Ireva P. Ozawa, Global Oil & Gold Company, a "public-

ly-held" Utah corporation, Sugarhouse Finance Company, a dba of Nupetco Associates, Petty Investment Company, a dba of Neuman C. Petty, Petty Motor Company, or Petty Motor Company, Inc., a Utah corporation, P & L Land Company, a dba of Neuman C. Petty and/or Nupetco Associates, Defendants.

No. 89–C–0144–S.

United States District Court,
D. Utah,
Central Division.

Aug. 12, 1994.

Michael Goldsmith, John Michael Coombs, Salt Lake City, UT, for plaintiffs.

John T. Caine, Richards, Caine & Allen, Ogden, UT, Joseph J. Palmer, Mark W. May, Moyle & Draper, Salt Lake City, UT, for defendants.

SAM, District Judge.

## I. INTRODUCTION

Defendants Neuman C. Petty, Ralph C. Petty, Wayne G. Petty, Keith A. Petty, Ireva G. Petty, Albert S. Petty and Nupetco Associates (the "Pettys") have moved to dismiss plaintiffs' claims alleged in their third amended complaint for failure to comply with Fed.R.Civ.P. 8 and for failure to state a claim pursuant to Fed.R.Civ.P. 9(b) and 12(b)(1) and (6). Defendants Brent G. Petty, Petty Motor Company, Charles N. Petty, and Ireva P. Ozawa also move to dismiss the third amended complaint and join the Pettys in their motion.[1]

In their third amended complaint, plaintiffs contend defendants committed violations under the Racketeer Influenced and Corrupt

---

1. During the course of the court's consideration of plaintiffs' and defendants' pleadings, relating to defendants' motion to dismiss, the court has received from counsel numerous citations to supplemental authority alleged to support their various claims and legal theories. The last such submission was received by the court on April 28, 1994. The court, in making its decision, has given careful consideration to all cases cited.

Organizations Act ("RICO"), the Securities Exchange Act of 1934, the Securities Act of 1933, and various pendant state law claims. For the reasons hereafter discussed, the court concludes that plaintiffs' third amended complaint is fatally defective and must, therefore, be dismissed.[2]

The facts alleged in this matter are adequately set forth in the extensive pleadings and the court will not recite them here. The essence of the case, as alleged in the second amended complaint, was stated by the magistrate judge in his March 27, 1991 Report and Recommendation ("R & R")[3], p. 4 as follows:

> The gist of the complaint is this: Michael Strand was a promoter of penny stock in Global Oil & Gold Company; Strand manipulated the market in Global Oil by use of various fraudulent schemes, and induced plaintiffs to purchase Global stock through various misrepresentations and material omissions. Neuman C. Petty and Nupetco Associates knowingly financed these fraudulent schemes by loaning or giving Strand large sums of money. The individual Petty defendants are liable for Nupetco Associates' misconduct as general partners of Nupetco.

In their third amended complaint, plaintiffs further assert that Neuman Petty and Nupetco Associates manipulated the stock and assets of several publicly-held companies.

## II. *STANDARD FOR DISMISSAL*

A defendant may move to dismiss a cause of action when the plaintiff has failed "to state a claim upon which relief can be granted." Fed.R.Civ.P. 12(b)(6). Such a motion puts the legal sufficiency of the plaintiff's complaint at issue. *See Bryan v. Stillwater Bd. of Realtors*, 578 F.2d 1319, 1321 (10th Cir.1977). In considering a motion to dismiss, "the pleadings should be liberally construed, all well-pleaded factual allegations

must be accepted as true, and all reasonable inferences must be drawn in favor of the plaintiff." *Garcia v. Eidal Int'l Corp.*, 808 F.2d 717, 719 (10th Cir.1986), *cert. denied,* 484 U.S. 827, 108 S.Ct. 94, 98 L.Ed.2d 55 (1987); *accord Castleglen, Inc. v. Commonwealth Savings Ass'n*, 689 F.Supp. 1069, 1070 (D.Utah 1988). Thus, a complaint does not warrant dismissal "unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Castleglen*, 689 F.Supp. at 1070.

Securities laws combating fraud should be construed liberally to promote their remedial purpose of protecting the investing public. *See Herman & MacLean v. Huddleston*, 459 U.S. 375, 386–87, 103 S.Ct. 683, 689–90, 74 L.Ed.2d 548 (1983). However, "[i]n all averments of fraud or mistake, the circumstances constituting fraud or mistake shall be *stated with particularity.* Malice, intent, knowledge, and other condition of mind of a person may be averred generally." Fed.R.Civ.P. 9(b) (emphasis added). Rule 9(b) not only applies generally in securities fraud cases, *see Seattle–First Nat'l Bank v. Carlstedt*, 800 F.2d 1008, 1010 (10th Cir. 1986), but courts strictly enforce it under the securities laws, requiring "detailed statements" of the specific, fraudulent conduct. *Farlow v. Peat, Marwick, Mitchell & Co.*, 956 F.2d 982, 986 (10th Cir.1992). The requirement of rule 9(b), that allegations of fraud be pled with particularity, also applies to each element of a RICO violation, as well as the predicate fraud allegations of RICO claims. *Id.; Cayman Exploration Corp. v. United Gas Pipe Line*, 873 F.2d 1357 (10th Cir. 1989). "[T]he threat of treble damages and injury to reputation which attend RICO actions justify requiring plaintiff to frame its pleadings in such a way that will give the

---

**2.** The following motions are rendered moot by the court's ruling: Plaintiffs' Motion to Certify Third Amended Complaint as a Class Action (Docket No. 249); Plaintiffs' Motion for Summary Judgment on Counts 16, 18, and 19 (Docket No. 264).

The following motions are denied: Defendants' Motion to Strike Affidavit (Docket No. 286); Defendants' Motion to Strike Supplemental Affidavit (Docket No. 305); Plaintiffs' Motion to Strike

Supporting Memorandum and Affidavit (Docket No. 296); Defendants' Motion to Strike Plaintiffs' Memorandum in Opposition (Docket No. 305).

**3.** Plaintiffs acknowledge that "Judge Gould's own terse summary accurately characterizes plaintiffs' theory of the case." Plaintiffs' Memorandum in Opposition to the Pettys' Motion to Dismiss, p. 17.

defendant, and the trial court, clear notice of the factual basis of the predicate acts." *Id.* at 1362.

 Rule 9(b) must be read in conjunction with Fed.R.Civ.P. 8 requiring plaintiffs to set forth "a short and plain statement of the claim" showing they are entitled to relief. *See Dahl v. Gardner,* 583 F.Supp. 1262, 1267 (D.Utah 1984). Attempting to balance these two rules, the *Dahl* court noted that " 'the most basic consideration in making a judgment as to the sufficiency of a pleading is the determination of how much detail is necessary to give adequate notice to an adverse party and enable [that party] to prepare a responsive pleading.' " *Id.* (quoting 5 C. Wright & A. Miller, *Federal Practice and Procedure* § 1298 (1969)); *see also Lochhead v. Alacano,* 697 F.Supp. 406, 415 (D.Utah 1988) ("[T]he policy of requiring notice to adverse parties is fundamental" in considering a motion to dismiss.).[4]

 In applying Rule 9(b), the Court of Appeals for the Tenth Circuit and this court have more fully explained the requirements of pleading fraud "with particularity." In *Carlstedt,* the Tenth Circuit adopted as a "correct statement of Rule 9(b) requirements in securities fraud cases" a standard of the District Court of Colorado:

> Rule 9(b) does not ... require the pleading of detailed evidentiary matter, nor does it require any particularity in connection with an averment of intent, knowledge, or condition of mind. It only requires identification of the circumstances constituting fraud or mistake. That requirement means ... that individual plaintiffs should identify particular defendants with whom they dealt directly, and from whom they purchased stock; that individual plaintiffs should designate the occasions on which affirmative statements were allegedly made to them—and by whom; and that individual plaintiffs should designate what

affirmative misstatements or half-truths were directed to them—and how.

*Carlstedt,* 800 F.2d at 1011 (quoting *Trussell v. United Underwriters, Ltd.,* 228 F.Supp. 757, 774–75 (D.Colo.1964)); *accord Bradford v. Moench,* 670 F.Supp. 920, 924–25 (D.Utah 1987); *see also Cook v. Zions First Nat'l Bank,* 645 F.Supp. 423, 424–25 (D.Utah 1986) (Plaintiffs must "set forth in specific terms the time, place, content, and manner of each defendant's alleged material misrepresentations or otherwise fraudulent conduct," particularly "in cases involving multiple defendants.").

 "A plaintiff may not justify a failure to plead fraud with specificity by arguing that he cannot meet the standards of Rule 9(b) without discovery." *Lochhead,* 697 F.Supp. at 415; *accord Farlow,* 956 F.2d at 990. However, a complaint based upon the plaintiff's information and belief, as long as it includes the facts upon which the belief is based, is adequate where the plaintiff " 'cannot be expected to have personal knowledge of the facts constituting the wrongdoing.' " *Lochhead,* 697 F.Supp. at 416 (quoting *Zatkin v. Primuth,* 551 F.Supp. 39, 42 (S.D.Cal. 1982)). Also, "more complex transactions require less specificity in pleading and, in these matters, the paragraphs of the complaint cannot be isolated but must be read as a whole." *Id.*

## III. DISCUSSION

### 1. Violation of Fed.R.Civ.P. 8

Defendants first assert that the third amended complaint should be dismissed with prejudice for violation of Fed.R.Civ.P. 8, which requires that pleadings contain a short and plain statement of the claims and that the averments be simple, concise and direct.[5]

 The court agrees. The magistrate judge and this court decided to reach the

---

**4.** " 'Rule 9(b) also safeguards defendant's reputation and goodwill from improvident charges of wrongdoing ... and it serves to inhibit the institution of strike suits.' " *Farlow,* 956 F.2d at 987 (quoting *Ross v. Bolton,* 904 F.2d 819, 823 (2d Cir.1990)).

**5.** As noted earlier, the court must read Rule 8 in conjunction with Rule 9, where fraud or mistake is alleged, and balance the two rules in making a judgment as to the sufficiency of the pleadings. Although the court treats Rule 8 and Rule 9 separately for purpose of discussion, the court's conclusions under each rule are arrived at after considering the two rules jointly.

merits of plaintiffs' second amended complaint in light of "substantial efforts already made to condense the complaint on the one hand, and the necessity of including enough details to survive a Rule 9(b) motion on the other hand," R & R, p. 3. However, the twice-warned plaintiffs have not been granted permanent immunity from having to comply with Rule 8 in future amended pleadings. After reviewing the third amended complaint, the court concludes that plaintiffs have failed to heed prior direction that they delete scandalous, impertinent and redundant matters from their complaint. The court further concludes that plaintiffs' third amended complaint still is replete with irrelevant and redundant allegations and consistently makes repetitive legal conclusions unsupported by relevant facts. The observation of the magistrate judge regarding the second amended complaint still applies to the third amended complaint. "The amended complaint is not a model of clarity: it is replete with sentences using passive verbs and awkward sentence construction making it difficult to read and difficult to identify the wrongs complained of, the perpetrators or the victims." R & R, p. 3. Plaintiffs' confusing and indirect averments are fatal to their complaint. In short, the court concludes that the length and lack of focus and clarity of the third amended complaint denies defendants adequate notice of the claims asserted against them and, therefore, the ability to adequately defend themselves. Accordingly the third amended complaint is DISMISSED with prejudice for violation of Fed.R.Civ.P. 8.

2. *Failure to state a claim pursuant to Fed.R.Civ.P. 9(b), 12(b)(1) and 12(b)(6)*

Although the court dismisses the entire third amended complaint for violation of Rule 8, the court concludes, as an additional basis for dismissing plaintiffs' federal RICO and Securities claims, that plaintiffs' federal law claims [6] asserted in the third amended complaint fail to state a claim pursuant to Fed. R.Civ.P. 9(b) and 12(b)(1) and (6).[7]

A. *RICO Claims* (Claims 1–3, 13–15)

Plaintiffs allege that defendants violated the RICO statute, 18 U.S.C. § 1962(a)–(d). As noted earlier, the requirement of Rule 9(b), that allegations of fraud be pled with particularity, applies to RICO claims. *Farlow v. Peat, Marwick, Mitchell & Co.*, 956 F.2d 982 (10th Cir.1992); *Cayman Exploration Corp. v. United Gas Pipe Line*, 873 F.2d 1357 (10th Cir.1989). Plaintiffs assert that ¶¶ 53–73 of the third amended complaint set forth numerous fraudulent schemes, constituting mail fraud, wire fraud, and securities fraud, specifically involving Neuman Petty and Nupetco Associates. They further contend that the specific involvement of Neuman Petty is detailed in ¶¶ 31, 32, 33, 39 and 40. Plaintiffs maintain that the third amended complaint now fully complies with *Cook v. Zions First Nat'l Bank*, 645 F.Supp. 423 (D.Utah 1986), in that a specific factual basis is alleged as to each defendant.

The court disagrees. *Cook*, in relevant part, requires plaintiffs complaining of RICO violations to allege with "specificity how, when and where each defendant actually committed fraud or participated in the alleged fraudulent scheme and criminal activity. Such detailed factual allegations are essential in RICO and RICE actions; each defendant must be specifically apprised of the fraudulent and criminal conduct in which plaintiffs claimed he engaged." *Cook*, 645 F.Supp. at 425. The court, after extensively studying the third amended complaint, concludes that plaintiffs still state only general conclusory allegations regarding defendants' involvement. Vague, conclusory allegations fail to state a claim for relief under RICO. *Glenn v. First Nat'l Bank in Grand Junction*, 868 F.2d 368 (10th Cir.1989). The court agrees with defendants that the third amended complaint contains substantially the same allegations of fraudulent schemes that the

---

6. Plaintiffs' federal law claims are asserted in their first, second, third, fourth, fifth, thirteenth, fourteenth, fifteenth, and sixteenth claims for relief of the third amended complaint.

7. In arguing that plaintiffs violated Rule 9, the focus of the parties' pleadings has been the RICO and securities claims asserted in the third amended complaint. The court makes no findings regarding any violation of Rule 9 with respect to plaintiffs' pendant state claims.

magistrate judge and this court previously found defective. The third amended complaint is, therefore, fatally defective as to the claims alleging RICO violations in that specific allegations of "how, when, and where" defendants participated in the alleged fraudulent schemes are absent, or inadequate. Plaintiffs have had four opportunities to sufficiently allege their RICO claims. Having failed to do so, their RICO claims are DISMISSED with prejudice.

As an additional partial basis for its ruling, the court further concludes, as did the magistrate judge and this court regarding the second amended complaint, that plaintiffs do not have standing to assert claims for damages based on a violation of 18 U.S.C. § 1962(a). A plaintiff seeking civil damages for a violation of section 1962(a) must allege facts showing injury from the use or investment of racketeering income; injury from the racketeering activity itself is not enough. *Grider v. Texas Oil & Gas Corp.*, 868 F.2d 1147 (10th Cir.1989). Plaintiffs have again failed to allege facts showing injury to any plaintiff from the use or investment of racketeering income.

### B. *Securities Claims*

In the third amended complaint, plaintiffs allege violations under section 10(b) of the Securities Exchange Act of 1934, 15 U.S.C. § 78j(b), and Rule 10b–5 of the General Rules and Regulations of the Securities and Exchange Commission 17 C.F.R. Part 240; control person liability under section 20(a) of the Securities Exchange Act of 1934, 15 U.S.C. § 78t, and section 15 of the Securities Act of 1933, 15 U.S.C. § 77*o*; and, sections 12(1) and (2) of the Securities Act of 1933, 15 U.S.C. § 77*l*.

1. *Securities Fraud: 10(b) & 10b–5* (Claims 4, 16)

Plaintiffs' fourth and sixteenth claims for relief allege violations of section 10(b) of the Securities Exchange Act of 1934, 15 U.S.C. § 78j(b), and Rule 10b–5, promulgated thereunder, 17 C.F.R. § 240.10b–5. Plaintiffs allege that defendants participated in these violations as principals, as aiders and abettors, and as conspirators. The allegations against defendants place them more in the category of aiders and abettors, or conspirators, than direct participants. The United States Supreme Court recently held that no private right of action exists for aiding and abetting a violation of section 10(b). *See Central Bank of Denver, N.A. v. First Interstate Bank of Denver, N.A.*, —— U.S. ——, ——, ——, 114 S.Ct. 1439, 1448, 1450, 128 L.Ed.2d 119 (1994). The court also is inclined to interpret *Central Bank of Denver* as extending to claims based on conspiracy and concerted action under section 10(b). Accordingly, plaintiffs' fourth and sixteenth claims for relief are DISMISSED.

Even if the court were to find that plaintiffs allege principal liability on the part of defendants under section 10(b) and Rule 10b–5, plaintiffs' claims are still defective. This court has previously recognized that the essential elements for claims under both section 10(b)[8] and rule 10b–5[9] are the same:

---

**8.** Section 10(b) states:

> It shall be unlawful for any person, directly or indirectly, by use of any means or instrumentality of interstate commerce or of the mails, or of any facility of any national securities exchange—
>
> (b) To use or employ, in connection with the purchase or sale of any security registered on a national securities exchange or any security not so registered, any manipulative or deceptive device or contrivance in contravention of such rules and regulations as the Commission may prescribe as necessary or appropriate in the public interest or for the protection of investors.

*Marchese v. Nelson*, 809 F.Supp. 880, 887 n. 1 (D.Utah 1993) (quoting 15 U.S.C. § 78j (1988)).

**9.** Under Rule 10b–5:

> It shall be unlawful for any person, directly or indirectly, by use of any means or instrumentality of interstate commerce, or of the mails or of any facility of any national securities exchange,
>
> (a) To employ any device, scheme, or artifice to defraud,
>
> (b) To make any untrue statement of a material fact or to omit to state a material fact necessary in order to make the statements made, in the light of the circumstances under which they were made, not misleading, or
>
> (c) To engage in any act, practice, or course of business which operates or would operate as fraud or deceit upon any person, in connection with the purchase or sale of any security.

*Marchese*, 809 F.Supp. at 887 n. 12 (quoting 17 C.F.R. § 240.10b–5 (1991)).

(1) damage to the plaintiff; (2) caused by reliance on defendant's misrepresentations or omissions of material facts, or on a scheme by defendant to defraud, (3) made with an intent to deceive, manipulate or defraud, (4) in connection with the purchase or sale of securities and (5) furthered by defendant's use of the mails or facilities of interstate commerce.

*Marchese v. Nelson*, 809 F.Supp. 880, 887 (D.Utah 1993) (quoting *Lochhead v. Alacano*, 697 F.Supp. 406, 414 n. 4 (D.Utah 1988)); *accord Alta Health Strategies, Inc. v. Kennedy*, 790 F.Supp. 1085, 1091 (D.Utah 1992). Claims for violations of section 10(b) and rule 10b–5 are subject to the particularity requirements of Rule 9(b). *See Lochhead*, 697 F.Supp. at 413–14. The court concludes, as to plaintiffs' 10(b) and 10b–5 claims, that plaintiffs still state only general conclusory allegations regarding defendants' involvement in the alleged securities fraud.

 As yet an additional basis for dismissal, were the court to find that plaintiffs allege principal liability on the part of defendants, the court further specifically concludes that plaintiffs have not pled the element of reliance with sufficient particularity. The plaintiffs must adequately allege reliance upon misrepresentations or omissions of material fact to sustain their section 10(b) and rule 10b–5 claims. *See Central Bank of Denver, N.A. v. First Interstate Bank of Denver, N.A.*, — U.S. —, —, 114 S.Ct. 1439, 1447, 128 L.Ed.2d 119 (1994); *Basic, Inc. v. Levinson*, 485 U.S. 224, 243, 108 S.Ct. 978, 989, 99 L.Ed.2d 194 (1988); *accord T.J. Raney & Sons, Inc. v. Fort Cobb, Oklahoma Irrigation Fuel Auth.*, 717 F.2d 1330, 1332 (10th Cir.1983), *cert. denied sub nom. Linde, Thomson, Fairchild, Langworthy, Kohn & Van Dyke v. T.J. Raney & Sons, Inc.*, 465 U.S. 1026, 104 S.Ct. 1285, 79 L.Ed.2d 687 (1984). Reliance provides the causal nexus between the defendant's misconduct and the plaintiff's injury. *See Basic*, 485 U.S. at 243, 108 S.Ct. at 989; *T.J. Raney*, 717 F.2d at 1332. The plaintiffs may establish reliance directly, through pleading they actually relied upon the defendants' alleged deception, or indirectly, through the "fraud-on-the-market" or the "fraud created the market" theories. *See Kelley v. Mid–America Racing Stables, Inc.*, 139 F.R.D. 405, 406 (W.D.Okla. 1990).

### a. *Direct Reliance*

 Plaintiffs allege that they relied upon misrepresentations of Strand and his agents which included material omissions. Plaintiffs further allege that the Pettys, as corporate insiders, control persons, and controlling shareholders, had a duty to disclose, but omitted to disclose, information material to a reasonable investor.

The court disagrees with plaintiffs on both points regarding defendants. First, after carefully reviewing ¶¶ 5–9, 15, 50, 57a, and 58 of the third amended complaint, which plaintiffs claim correct prior defects as to lack of particularity as to misrepresentations and omissions Strand allegedly made, the court finds that plaintiffs' allegations are still too general to pass muster under Rule 9(b) standards. Secondly, a duty to disclose, based on facts demonstrating a relationship of trust and confidence, must be present in order to impose liability for violations of Rule 10b–5. *Windon Third Oil and Drilling Partnership v. FDIC*, 805 F.2d 342, 347 (10th Cir.1986), *cert. denied*, 480 U.S. 947, 107 S.Ct. 1605, 94 L.Ed.2d 791 (1987). After carefully reviewing ¶¶ 32, 33, 63, 65, 66, and 67 of the third amended complaint, which plaintiffs assert specifically allege for the first time that Petty and Nupetco were control persons of Global and, therefore, had a duty to disclose, the court finds that no specific factual allegations support plaintiffs' bare conclusions of control of Global by the Pettys.

The court is not persuaded by plaintiffs' claim that the magistrate judge's finding, that the second amended complaint sufficiently alleged control person liability for purposes of 15 U.S.C. § 78t(a) on all the Pettys, triggers a duty to disclose.[10] Plaintiffs correctly cite *Bradford v. Moench*, 670 F.Supp. 920, 925 (D.Utah 1987) (citing *Cody v. Robert and Company*, 40 S.E.C. 907 (1961)), for the proposition that corporate

---

**10.** As will be discussed later in this opinion, the court reverses its prior conclusion that plaintiffs

have sufficiently alleged control of Strand and Global by defendants.

insiders, such as officers, directors or controlling stockholders, have a duty to disclose material information. Here, Pettys were not officers or directors of Global. No specific factual allegations support plaintiffs' bare conclusions of control of Global by Petty. Plaintiffs make only general, not specific, allegations of direct reliance.

### b. *Fraud on the Market Reliance*

Plaintiffs also allege indirect reliance through the fraud on the market theory. The United States Supreme Court has explained the reasoning behind this theory.

> "The fraud on the market theory is based on the hypothesis that, in an open and developed securities market, the price of a company's stock is determined by the available material information regarding the company and its business.... Misleading statements will therefore defraud purchasers of stock even if the purchasers do not directly rely on the misstatements.... The causal connection between the defendants' fraud and the plaintiffs' purchase of stock in such a case is no less significant than in a case of direct reliance on misrepresentations."

*Basic, Inc. v. Levinson,* 485 U.S. 224, 242, 108 S.Ct. 978, 989, 99 L.Ed.2d 194 (quoting *Peil v. Speiser,* 806 F.2d 1154, 1160–61 (3d Cir.1986)).[11]

The Court has approved the use of the theory, and thus reliance is presumed for purposes of section 10(b) or rule 10b–5 actions, in cases where the plaintiff has alleged the existence of an open and developed, or "efficient," market. *See Basic,* 485 U.S. at 241–47, 108 S.Ct. at 988–992; *Bank of Denver v. Southeastern Capital Group, Inc.,* 763

F.Supp. 1552, 1557 (D.Colo.1991); *In re Sahlen & Assocs., Inc. Securities Litigation,* 773 F.Supp. 342, 355 (S.D.Fla.1991).[12] In the wake of *Basic,* other courts have attempted to explain what is necessary to plead an "efficient market." For example, in *Freeman v. Laventhol & Horwath,* 915 F.2d 193 (6th Cir.1990), the Court of Appeals for the Sixth Circuit recognized the following definitions:

> —An *open market* is one in which anyone, or at least a large number of persons, can buy or sell.
>
> —A *developed market* is one which has a relatively high level of activity and frequency, and for which trading information (e.g., price and volume) is widely available. It is principally a secondary market in outstanding securities. It usually, but not necessarily, has continuity and liquidity (the ability to absorb a reasonable amount of trading with relatively small price changes).
>
> —An *efficient market* is one which rapidly reflects new information in price. These terms are cumulative in the sense that a developed market will almost always be an open one. And an efficient market will almost invariably be a developed one.

*Id.* at 198–99 (emphasis added). In *Cammer v. Bloom,* 711 F.Supp. 1264 (D.N.J.1989), *appeal dismissed,* 993 F.2d 875 (3d Cir.1993), the New Jersey District Court set forth a number of factors which it determined would be "helpful" and "persuasive" in establishing an efficient market: (1) a large average weekly trading volume, (2) reports by a significant number of securities analysts, (3) numerous market makers and arbitrageurs, (4) eligibility of the company to file an S–3

---

**11.** *See also T.J. Raney,* 717 F.2d at 1332 ("The theory is grounded on the assumption that the market price reflects all known material information. Material misinformation will theoretically cause the artificial inflation or deflation of the stock price."); *In re Texas Int'l Sec. Litig.,* 114 F.R.D. 33, 42 (W.D.Okla.1987) ("[T]his theory finds its greatest justification when applied to class actions alleging fraudulent misrepresentations or omissions that affected security prices on a developed open market.").

**12.** To properly invoke the rebuttable presumption of reliance, a plaintiff must allege and prove:

(1) that the defendant made public misrepresentations; (2) that the misrepresentations were material/would induce a reasonable, relying investor to misjudge the value of the shares; (3) that the shares were traded on an efficient market; (4) that the misrepresentations would induce a reasonable, relying investor to misjudge the value of the shares; and (5) that the plaintiff traded the shares between the time the misrepresentations were made and the time the truth was revealed. *See Basic,* 485 U.S. at 248 n. 27, 108 S.Ct. at 992 n. 27 (emphasis added); *Freeman v. Laventhol & Horwath,* 915 F.2d 193, 198 (6th Cir.1990).

Registration Statement for a public offering, and (5) facts demonstrating an immediate change in stock price due to unexpected corporate events or financial releases. *See id.* at 1286–87; *accord Alter v. DBLKM, Inc.*, 840 F.Supp. 799, 804 (D.Colo.1993); *Kelley*, 139 F.R.D. at 409.

■■■■ Plaintiffs, without alleging trading volume, plead the pure legal conclusion that Global had an efficient and well developed market for its stock. In support of that conclusion, plaintiffs allege that five of the plaintiffs had this "impression" "based on the existence of up to fourteen separate market makers during the class period." Complaint ¶ 51. No allegations suggest that these market makers were actually misled or otherwise misunderstood Global's situation in any way or otherwise link them with the dates of plaintiffs' market purchases. No allegations show active trading at any time by the market makers. The volume of the market for Global shares is not alleged. There is no allegation that Global enjoyed the status of being a Form S–3 registrant. Additionally, the allegations of penny market prices, inconsistent financial statements, off market transactions at off market prices, all demonstrate that Global's market does not meet the requirements set forth in *Basic*, 485 U.S. 224, 108 S.Ct. 978, 99 L.Ed.2d 194 (1988). Dismissal for failure to state a claim is appropriate where there are inadequate factual allegations to show an efficient, developed market. *Stinson v. Van Valley Development Corp.*, 714 F.Supp. 132 (E.D.Pa.1989); *aff'd*, 897 F.2d 524 (3d Cir.1990).

■■■■ The court likewise is not persuaded by plaintiffs' argument that the "fraud created the market" variance of the fraud on the market theory applies to the circumstances of this case. The Court of Appeals for the Tenth Circuit adopted this theory in *T.J. Raney & Sons v. Fort Cobb, Oklahoma Irrig. Fuel Auth.*, 717 F.2d 1330, 1333 (10th Cir. 1330), following the Fifth Circuit's reasoning in *Shores v. Sklar*, 647 F.2d 462 (5th Cir. 1981). *See Edgington v. R.G. Dickinson and Co.*, 139 F.R.D. 183, 193 (D.Kan.1991). Although some courts have construed this theory as a variation of the "fraud on the market" theory, perhaps because it too offers plaintiffs an opportunity to establish a presumption of reliance without having to plead actual, direct reliance, it really "is separate and distinct from the fraud on the market theory, and is supported by an entirely different rationale." *Freeman v. Laventhol & Horwath*, 915 F.2d 193, 200 (6th Cir.1990).

"Fraud created the market" is a circular theory based on faith in the market itself. The theory presumes the securities market is legitimate, and that buyers rely on its legitimacy. As a result, the theory recognizes that the market inevitably confers legitimacy on all of its products; in effect, the market certifies that each traded security has some value. Because of this certification, buyers may presume any traded security in the market must be worth at least something, or else it would not be there.

*Gruber v. Price Waterhouse*, 776 F.Supp. 1044, 1052 (E.D.Pa.1991); *accord Freeman*, 915 F.2d at 200. The causal relationship between a defendant's purported fraud and a plaintiff's injury "is established by alleging and proving that the securities could not have been marketed at any price absent fraud." *Freeman*, 915 F.2d at 200; *see also T.J. Raney*, 717 F.2d at 1333 (fraud created the market "merely extends the protection of Rule 10b–5 to those cases in which the securities were not qualified legally to be issued, and as the act states there was a scheme to defraud or act to defraud"); *accord Bank of Denver v. Southeastern Capital Group, Inc.*, 763 F.Supp. 1552, 1557–58 (D.Colo.1991); *Kelley v. Mid–America Racing Stables, Inc.*, 139 F.R.D. 405, 407–08 (W.D.Okla.1990). Thus, the theory appears to be based on "some illegality in the process of issuing the securities." *Kelley*, 139 F.R.D. at 408; *but see Gruber*, 776 F.Supp. at 1052–53 (" '[F]raud created the market' only applies where the underlying business is an absolute sham, worthless from the beginning.") Plaintiffs' burden is to show defendants knowingly, and with intent to defraud, conspired to bring securities onto the market which were not entitled to be marketed, that plaintiffs reasonably relied on market availability as an indication of authenticity, and consequently plaintiffs suffered an injury

from the purchase of the securities. *T.J. Raney*, 717 F.2d at 1333.

■ Plaintiffs claim to have met their pleading burden by alleging that the Pettys, in concert with Strand, embarked on a fraudulent scheme to market unmarketable securities. Complaint ¶ 17, 31–33, 50 and 51. However, the court is of the view that plaintiffs' conclusory allegations fail to satisfy their burden on this issue.

### 2. *Control Person* (Claims 5, 16)

Plaintiffs have alleged that the Pettys are "control persons" under section 20a of the Securities Exchange Act of 1934, 15 U.S.C. § 78t, and section 15 of the Securities Act of 1933, 15 U.S.C. § 77o. The magistrate judge, in his March 27, 1991 Report and Recommendation, which this court essentially adopted, found that plaintiffs' second amended complaint sufficiently stated a cause of action against Neuman Petty and Nupetco Associates for purposes of section 20a.

Although defendants, in their recent motion, do not specifically raise this issue again, plaintiffs have invited the court to examine the complaint and assure itself that RICO and securities claims are stated. Upon doing so for the third amended complaint, the court, after revisiting this issue, now disagrees with and reconsiders its prior order adopting the R & R that control person liability has been alleged against Neuman Petty and Nupetco Associates. The court now concludes that the complaint does not sufficiently allege a claim for control person liability.

■ The court may address both of plaintiffs' control person claims simultaneously because, "[a]lthough § 15 and § 20(a) are not identical, the controlling person analysis is the same." *First Interstate Bank of Denver v. Pring*, 969 F.2d 891, 897 (10th Cir.1992), *rev'd on other grounds sub nom. Central Bank of Denver, N.A. v. First Interstate Bank of Denver, N.A.*, —— U.S. ——, 114 S.Ct. 1439, 128 L.Ed.2d 119 (1994). In *Pring*, the Tenth Circuit set forth a two-step analysis for liability under both statutes: "(1) determining whether the defendant is a controlling person; and (2) if so, determining

whether the defendant nevertheless is entitled to the good-faith defense stated in the statute's final clause." *Id.* at 896. In defining the term "controlling person," the court stated: " '[t]he statute is remedial and is to be construed liberally. It has been interpreted as requiring only some indirect means of discipline or influence short of actual direction to hold a "controlling person" liable.' " *Id.* (quoting *Richardson v. MacArthur*, 451 F.2d 35, 41–42 (10th Cir.1971). The Securities and Exchange Commission has defined the term "control" as follows: " 'the possession, direct or indirect, of the power to direct or cause the direction of the management and policies of a person, whether through the ownership of voting securities, by contract, or otherwise.' " *Id.* at n. 9 (quoting 17 C.F.R. § 230.405). A "controlling person" need not have "actually or culpably participated in the primary violation." *Id.* at 897. Finally, allegations of "controlling person" liability are not subject to the particularity requirements of Rule 9(b).

■ Plaintiffs alleged that Neuman Petty and Nupetco Associates were control persons of Strand and Global in that they: controlled assets and stock of Global; secretly provided financing to Strand and Global; Loaned Strand money; guaranteed financing with third parties for Strand's benefit; provided Strand with personal residences and automobiles; and that Neuman Petty regularly conferred with Strand.

The court's view is that plaintiffs' allegations regarding the relationship of the Pettys to Strand fail to allege, for purposes of control person liability, the power of the Pettys to direct the management and policies of Strand or Global regarding the specific transactions upon which the primary violations are predicated. Accordingly, plaintiffs' fifth and sixteenth claims for relief are DISMISSED.

### 3. *Alleged Violation of § 12(1), (2)* (Claim 16)

■ Plaintiff Arena Land alleges that defendants violated § 12(1) and (2) of the Securities Act of 1933, 15 U.S.C. § 77*l* (1) and (2). Section 12(1) imposes liability for the offer or sale of an unregulated security in violation of

the registration and properties requirements of § 5(a), 15 U.S.C. § 77e. Section 12(2) imposes liability for the offer or sale of a security on the basis of misleading or false statements in a prospectus or oral statements used to sell the securities.

The essence of the claim is that Strand and Neuman Petty fraudulently induced Arena Land to loan Global Oil money and to convey certain real property to Nupetco. Arena Land contends that this transaction constitutes an improper offer or sale of a security by Petty and Nupetco. Arena Land further contends that Neuman Petty and Nupetco misrepresented the purposes of the security and failed to disclose the attendant risk to Arena Land.

The magistrate judge, in his R & R, adopted by this court, concluded as to the second amended complaint that "the alleged fraud was in connection with a loan and not the sale of any securities. The mere fact that Arena Land was a shareholder of Global Oil does not turn common law fraud into a 10b–5 action." R & R, p. 14. In the third amended complaint, Arena Land now couches its claim as violations of section 12(1) and (2). The court still concludes that there are simply no factual allegations which suggest that this transaction was the offer or sale of a security. Accordingly, plaintiffs' sixteenth claim for relief is DISMISSED.

## IV. CONCLUSION

For the reasons stated, plaintiffs' third amended complaint is DISMISSED with prejudice.