**Arthur M. SCHWARTZ, on behalf of himself and all others similarly situated, Plaintiff,**

v.

**CELESTIAL SEASONINGS, INC., Paine-Webber, Inc., Shearson/Lehman Brothers, Inc., Mo Siegel, Ronald V. Davis, Philip B. Livingston, Vestar/Celestial Investment Limited Partnership, John D. Howard, James P. Kelley, Arthur J. Nagle, Daniel S. O'Connell, Robert L. Rosner, and Barnet M. Feinblum, Defendants.**

No. 95–K–1045.

United States District Court, D. Colorado.

Nov. 6, 1995.

Robert N. Miller, LeBoeuf, Lamb, Greene & MacRae, L.L.P., Denver, Colorado, for plaintiff.

Daniel J. Thomasch, Richard J. DeMarco, Jr., Donovan Leisure Newton & Irvine, New York City, for defendant.

## MEMORANDUM OPINION AND ORDER

KANE, Senior District Judge.

### Introduction

Plaintiff Arthur M. Schwartz filed this suit on behalf of himself and all others similarly situated, claiming the investors who purchased Celestial Seasonings stock during the period beginning with Celestial's initial public offering on July 12, 1993, and ending on May 18, 1994, were defrauded. Schwartz has named the corporation itself, its underwriters, and several individuals as defendants.

Celestial Seasonings, Inc. ("Celestial") is a Delaware corporation with its principal place of business in Boulder, Colorado. Celestial controls 53% of the herb tea market. It is the largest manufacturer and marketer of herb teas in the United States. (Compl. ¶ 7.)

PaineWebber, Inc. and Shearson/Lehman Brothers, Inc. ("Underwriters") are investment banking houses that specialize in underwriting public offerings of securities. They served as co-lead underwriters for an initial public offering ("IPO") made by Celestial Seasonings, Inc. (Compl. ¶ 8.)

The individual defendants are: Mo Siegel, Ronald V. Davis, Philip B. Livingston, Vestar/Celestial Investment Limited Partnership, John D. Howard, James P. Kelley, Arthur J. Nagle, Daniel S. O'Connell, Robert L. Rosner, and Barnet M. Feinblum.[1] (Compl. ¶¶ 9–21.) Schwartz alleges all of these defendants are either previous or current members of Celestial's Board, signatories of the registration statement or other SEC forms, or persons who controlled Celestial.

Schwartz claims subject matter jurisdiction for the federal securities causes of action pursuant to § 22 of the Securities Act of 1933 and § 27 of the Securities Exchange Act of 1934. He seeks supplemental jurisdiction over the state and common law claims pursuant to 28 U.S.C. § 1367.

Specifically, Schwartz's claims arise under §§ 11 and 15 of the Securities Act (codified at 15 U.S.C. §§ 77k & 77o ), §§ 10(b) and 20(a) of the Securities Exchange Act (codified at 15 U.S.C. §§ 78j(b) & 78t(a)), Rule 10b–5, §§ 11–51–501 & 11–51–604 of the Colorado Securities Act, and the common law.

### Pending Motions

Defendants have formed two groups, the Underwriters and all others. Each has filed a motion to dismiss the complaint with prejudice. Defendants Celestial, Vestar, Siegel,

---

**1.** Schwartz sometimes collectively refers to Vestar, Howard, Kelley, Nagle and Rosner as the "Vestar Defendants" and to Siegel, Livingston, Davis, Feinblum, and the Vestar Defendants as the "Individual Defendants." This classification, however, fails to include Daniel S. O'Connell in either category.

Davis, Livingston, Howard, Kelley, Nagle, O'Connell, Rosner and Feinblum ("Celestial Defendants") filed the first motion to dismiss. The Celestial Defendants contend Schwartz lacks standing, his claims are time barred, and the complaint fails under Fed.R.Civ.P. 12(b)(6) & 9(b). In addition, they move to dismiss the state law claims because the court lacks independent jurisdiction over them.

The Underwriters move to dismiss pursuant to Fed.R.Civ.P. 12(b)(6) & 9(b) and incorporate by reference the Celestial Defendants' motion to the extent applicable. They further contend Schwartz failed to plead properly the element of reliance and that they are not liable under § 10(b) because it does not provide for secondary liability.

■ All parties have attached appendices to their respective briefs. The documents, however, are incomplete and inconclusive. Therefore, I decline to convert the motions to dismiss on the pleadings to motions for summary judgment. Accordingly, I reject the appendices for purposes of this opinion.[2]

### Facts

Schwartz maintains the disclosures in the prospectuses and other materials referring to a licensing agreement with Perrier were materially false and misleading because they failed to disclose that: Perrier was neither able nor willing to distribute Celestial's ready-to-drink iced teas; Perrier's distribution system was dominated by delivery routes incompatible with the sale of ready-to-drink iced teas; and Perrier was not likely to market Celestial's product due to its affiliation with Nestle. Schwartz further alleges there was no reasonable basis for defendants' belief that this conflict of interest would not adversely affect the distribution of Celestial's ready-to-drink iced tea. (Compl. ¶ 47.)

In support, Schwartz alleges the following facts:

In its preliminary and final prospectuses, Celestial repeatedly referred to a licensing agreement signed in December 1991 with Perrier Group of America, Inc. Shortly after this agreement was signed, Nestle, S.A., which also participated in the ready-to-drink iced tea market, acquired Perrier's parent company. However, the prospectuses stated that Celestial did "not believe that Nestle's ownership of Perrier USA [would] adversely impact the Perrier Licensing Agreement." The prospectuses also stated that "[n]o assurances can be made that the Perrier Licensing Agreement will be successful for the Company." (Compl. ¶ 46.)

This "Perrier Agreement" granted Perrier the exclusive license to manufacture, market and distribute ready-to-drink iced tea under Celestial's name within the United States and Canada. (Compl. ¶¶ 33–40). In return, Perrier paid Celestial $200,000 up front and agreed to pay royalties based on a percentage of net sales or guaranteed minimum annual payments for calendar years. (Compl. ¶ 39.) The Perrier Agreement was for a ten-year duration, subject to automatic one-year renewals, and could be terminated by Perrier with a year's notice or by either party under certain circumstances.

The agreement was part of Celestial's effort "to expand beyond its core hot herb tea business." (Compl. ¶ 33.) Celestial intended to capitalize on its brand awareness and loyalty to foster its expansion into the ready-to-drink iced tea market. (Compl. ¶ 37.) Under the Perrier Agreement, the ready-to-drink iced tea was to be marketed in fourteen major metropolitan areas in the summer of 1993. (Compl. ¶ 38.)

On December 15, 1993, Celestial announced that it had filed a registration statement with the SEC for an offering of 425,000

---

**2.** *Seattle–First Nat'l Bank v. Carlstedt*, 800 F.2d 1008, 1011 (10th Cir.1986); *see also*, 5A Wright & Miller, *Federal Practice & Procedure*, § 1366, at 491–93 (2d Ed.1990) ("The court has complete discretion to determine whether or not to accept any material beyond the pleadings that is offered in conjunction with a Rule 12(b)(6) motion. This discretion generally will be exercised on the basis of a determination of whether or not the prof-

fered material, and the resulting conversion from the Rule 12(b)(6) to the Rule 56 procedure, is likely to facilitate the disposition of the action. When the extra-pleading material is comprehensive and will enable a rational determination of a summary judgment motion, the court is likely to accept it; when it is scanty, incomplete, or inconclusive, the court probably will reject it.").

shares of common stock. (Compl. ¶ 54.) On January 25, 1994, the defendants filed a prospectus for the second offering of 450,000 shares, of which Vestar sold 425,000 shares. The remaining 25,000 shares were sold by defendant Feinblum and his family. (Compl. ¶ 59.) On January 26, 1994, Celestial announced the completion of the second offering and again stated that Perrier manufactures and markets tea under the Perrier Agreement. (Compl. ¶ 63.)

On April 24, 1994, PaineWebber issued a report on Celestial and rated its stock attractive. PaineWebber reported it would raise its 1994 and 1995 earnings estimates for Celestial partly because of Celestial's "strong growth in distribution and geographic channels." It also stated, "On the ready-to-drink tea front. [Celestial] is working closely with Perrier to broaden distribution. There appears to be a sense of urgency to move its ready-to-drink product into new markets." (Compl. ¶ 68.)

On approximately May 9, 1994, Celestial announced in its Form 10–Q, "[Celestial] and Perrier Groups of America, Inc. have commenced discussions concerning amendments to or the possible termination of the license agreement that the Company and Perrier entered into in 1991." (Compl. ¶ 69.) The price of Celestial's stock dropped on May 9, May 10 and May 11. On May 18, 1994, the Dow Jones News Wire reported that Perrier's national distribution system did not involve convenience stores which were needed for the iced-tea drinks. (Compl. ¶ 70.) On June 7, 1994, Celestial issued a release stating it would either revise or end its joint venture with Perrier because the Perrier Agreement had "failed to reach expecta-

tions." (Compl. ¶ 71.) On July 6, 1994, PaineWebber decided to reduce Celestial's earnings estimates, and the stock price reached a 52–week low. (Compl. ¶ 73.) On December 12, 1994, Celestial and Perrier jointly announced they had mutually agreed to discontinue their licensing agreement. (Compl. ¶ 76.)

### Standing

■ Defendants allege that Schwartz lacks standing. Defendants' arguments are meritless regarding Schwartz's standing as an individual and premature regarding Schwartz's standing as a class representative.[3]

■ The Supreme Court in *Blue Chip Stamps v. Manor Drug Stores*, 421 U.S. 723, 730–742, 95 S.Ct. 1917, 1922–1929, 44 L.Ed.2d 539 (1975), adopted what is known as the Birnbaum purchaser-seller rule by holding that only actual purchasers or sellers of securities have standing to bring private actions under § 10(b) and Rule 10b–5. *Accord Grubb v. FDIC*, 868 F.2d 1151, 1161–62 (10th Cir.1989); *Mullen v. Sweetwater Dev. Corp.*, 619 F.Supp. 809, 814–16 (D.Colo.1985). Similarly, those who purchase newly issued securities, which are directly subject to the prospectus and registration statement, may file an action under § 11. Securities Act, § 11; *Barnes v. Osofsky*, 373 F.2d 269, 271–73 (2d Cir.1967).

■ Schwartz's claims against the defendants are premised primarily upon § 11 of the Securities Act, § 10(b) of the Exchange Act and Rule 10b–5. (Compl. Counts I & II.) Schwartz alleges Celestial's IPO occurred on July 12, 1993, and he purchased 500 shares of Celestial common stock on July 15, 1993. (Compl. ¶¶ 1, 6.) Therefore, Schwartz clearly has standing to bring both § 11 and

---

3. The class certification issue is left for determination under Rule 23.
  The burden of establishing a right to maintain an action under Rule 23, falls, of course, on the party seeking to utilize the procedure.... Compliance with the Rule 23 prerequisites to a class action theoretically should not be tested by a motion to dismiss for failure to state a claim or a summary judgment motion. The proper vehicle is Rule 23(c)(1), which provides

that, as soon as practicable after the commencement of a class action, "the court shall determine by order whether it is to be so maintained." Therefore, a party wishing to challenge the validity of maintaining the action under Rule 23 should move for a determination under Rule 23(c)(1) that a class action is unwarranted.

§ 10(b) claims as a purchaser of the Celestial stock offered on July 12, 1993.[4]

## Statute of Limitations

Defendants claim Schwartz's federal securities law claims are time barred because they do not comply with the one-year/three-year structure found in the Securities and Exchange Acts. (Celestial Mot. at 6.) Defendants argue the one-year period should have begun in December 1993 rather than in May 1994 as Schwartz suggests. *Id.* at 7.

■ The federal securities claims in this case are subject to the one/three-year limitations structure. Securities Act § 13; *Lampf, Pleva, Lipkind, Prupis & Petigrow v. Gilbertson*, 501 U.S. 350, 364, 111 S.Ct. 2773, 115 L.Ed.2d 321 (1991). This structure requires an action to be filed within one year after the plaintiff has notice of the violation and not more than three years after the violation occurred. *Anixter v. Home–Stake Production Co.*, 947 F.2d 897, 899 (10th Cir. 1991), *vacated on other grounds*, 503 U.S. 978, 112 S.Ct. 1658, 118 L.Ed.2d 382 (1992). The one-year period begins when the misrepresentation was actually discovered or should have been discovered. *Snyder v. Newhard, Cook & Co., Inc.*, 764 F.Supp. 612, 619 (D.Colo.1991).

■ Assuming the dates Schwartz alleges are true, it appears from the complaint that Celestial continued to tout its Perrier Agreement until the Form 10–Q was filed on May 9, 1994. Defendants rely upon Celestial's statement in December 1993, which stated minimum royalty payments were reported for fiscal 1993 and projected for fiscal 1994, as providing Schwartz with notice of securities violations to commence the one-year limitation period. The Agreement was, however, signed for a ten-year period, and Schwartz maintains the prospectus issued for the January 1994 offering reiterated the same language found in the IPO prospectus

Charles A. Wright, Arthur R. Miller, & Mary Kay Kane, 7B *Federal Practice & Procedure* § 1798, at 424, 431 (2d Ed.1986).

4. Defendants contest Schwartz's standing regarding the secondary offering. However, § 11 liability in this case would stem from the registration statement for the IPO. The sections of Schwartz's complaint which refer to the second-

regarding the Perrier Agreement. (Compl. ¶ 60.)

Furthermore, as late as April 26, 1994, PaineWebber raised its 1994 and 1995 earnings estimates for Celestial because of the increased distribution due in part to the Perrier Agreement. Yet Schwartz claims Celestial's stock price dropped for three consecutive days beginning May 9, 1994, in reaction to the issuance of the Form 10–Q. Assuming these allegations are true, it cannot be said a reasonable person would have discovered defendants' fraud in December 1993. Defendants' motion to dismiss Schwartz's securities fraud claims on statute of limitations grounds is therefore denied.

## Reliance

### A. Section 11

■ Reliance is presumed for § 11 plaintiffs:

When a section 11(a) plaintiff has acquired the securities more than twelve months after the effective date of the registration statement ... the plaintiff must prove reliance on the material misstatement or omission.... Without proof of plaintiff's actual knowledge of the misstatement or omission at time of purchase, there is a conclusive presumption of reliance for any person purchasing the security prior to the expiration of twelve months.

Thomas L. Hazen, *The Law of Securities Regulation* § 7.3, at 288–90 (2d ed.1990). By purchasing shares three days after Celestial commenced its IPO, Schwartz falls well within the twelve-month period which allows for the conclusive presumption of reliance.

### B. Section 10(b) & Rule 10b–5

Defendants argue that Schwartz's other claims for relief, particularly his Rule 10b–5 claim, must fail because Schwartz did not plead reliance.

ary offering are for purposes of pleading an ongoing fraudulent scheme. Hence, defendants' argument actually disputes the appropriateness of the class parameters, including the class period, claimed by Schwartz rather than Schwartz's actual standing. Again, this issue is best resolved when—and if—class certification is determined in accordance with Rule 23.

■ Reliance is the element of a Rule 10b–5 claim which provides the causal connection between the defendant's misconduct and the plaintiff's injury. *Basic Inc. v. Levinson,* 485 U.S. 224, 243, 108 S.Ct. 978, 989, 99 L.Ed.2d 194 (1988); *T.J. Raney & Sons, Inc. v. Oklahoma Irrigation Fuel Authority,* 717 F.2d 1330, 1332 (10th Cir.1983), *cert. denied,* 465 U.S. 1026, 104 S.Ct. 1285, 79 L.Ed.2d 687 (1984). A plaintiff must therefore show reliance on the defendant's misrepresentation to recover under Rule 10b–5. *Central Bank of Denver v. First Interstate Bank of Denver,* — U.S. —, —, 114 S.Ct. 1439, 1449, 128 L.Ed.2d 119 (1994). "There is, however, more than one way to demonstrate the causal connection." *Basic Inc.,* 485 U.S. at 243, 108 S.Ct. at 989.

■ A private action brought under Rule 10b–5 is traditionally predicated on the plaintiff's actual reliance on the defendant's misrepresentation, which can occur by either an affirmative statement or nondisclosure. *T.J. Raney,* 717 F.2d at 1332. When the alleged fraud is premised upon nondisclosure, the Supreme Court has ruled that under special circumstances the plaintiff's reliance may be presumed from the materiality of the omissions:

> Under the circumstances of this case, involving primarily a failure to disclose, positive proof of reliance is not a prerequisite to recovery. All that is necessary is that the facts withheld be material in the sense that a reasonable investor might have considered them important in the making of this decision.... This obligation to disclose and this withholding of a material fact establish the requisite element of causation in fact.

*Affiliated Ute v. United States,* 406 U.S. 128, 153–54, 92 S.Ct. 1456, 1472, 31 L.Ed.2d 741 (1972); *accord Grubb,* 868 F.2d at 1163 (presuming reliance "when the plaintiff establishes that the defendant withheld material information and that the defendant owed the plaintiff a duty to disclose.... This presumption recognizes the unique difficulty of proving reliance on a failure to disclose mate-

rial information of which the plaintiff did not know.") (citations omitted).

Thus, the limiting circumstances of *Affiliated Ute* are: (1) materiality of the omission, and (2) a duty to disclose arising from the special relationship of the parties. The *Affiliated Ute* presumption applies only in cases based upon omissions, not in cases based on misrepresentations or in mixed cases involving both omissions and misrepresentations. *See, e.g., Williams v. Balcor Pension Investors,* 150 F.R.D. 109, 113 (N.D.Ill.1993). Moreover, in *Affiliated Ute,* the special relationship of the defendant to the plaintiff was a fiduciary relationship.

■ The Supreme Court has recognized a rebuttable presumption of reliance which is supportable by the fraud on the market theory.[5] *Basic Inc.,* 485 U.S. at 241–45, 108 S.Ct. at 988–90. It provided the following rationale for doing so:

> An investor who buys or sells stock at the price set by the market does so in reliance on the integrity of that price. Because most publicly available information is reflected in market price, an investor's reliance on any public material misrepresentations, therefore, may be presumed for purposes of a Rule 10b–5 action.

*Id.* at 247, 108 S.Ct. at 992; *see In re Synergen, Inc. Securities Litigation,* 863 F.Supp. 1409, 1420–21 (D.Colo.1994). Defendants have an opportunity to rebut this presumption by producing any evidence which severs the causal connection between the alleged misrepresentation and the injury to plaintiff. *Basic Inc.,* 485 U.S. at 248, 108 S.Ct. at 992.

The Tenth Circuit determined the fraud on the market theory could apply to newly issued securities in *T.J. Raney,* 717 F.2d at 1332. In that case the court found the theory applied to new issuances which were "not qualified legally to be issued:"

> Federal and state regulation of new securities at a minimum should permit a purchaser to assume that the securities were lawfully issued. This holding does not imply in any way that the regulatory body considers the worth of the security or the

---

**5.** Reliance is presumed under the fraud on the market theory if it is shown that the defendant's misstatement or omission affected the market price which then caused plaintiff's injury when

selling or purchasing at the fraudulently induced market price. Thomas Lee Hazen, *The Law of Securities Regulation* § 13.5, at 98 (2d ed.1990).

veracity of the representations made in the offering circular nor does it "establish a scheme of investors' insurance." It merely extends the protection of Rule 10b–5 to those cases in which the securities were not qualified legally to be issued, and as the act states there was a scheme to defraud or act to defraud.

*Id.* at 1333 (following the Fifth Circuit in applying the fraud on the market theory to new, unlawfully-issued securities) (citations omitted).

The holding in *T.J. Raney* complies with the U.S. Supreme Court's approach to interpreting modern securities laws. "The modern securities markets, literally involving millions of shares changing hands daily, differ from the face-to-face transactions contemplated by early fraud cases, and our understanding of Rule 10b–5's reliance requirement must encompass these differences." *Basic Inc.*, 485 U.S. at 243–44, 108 S.Ct. at 990. "[T]he federal securities acts are not frozen into the old common law patterns; and ... they must be interpreted flexibly and progressively, not technically nor grudgingly, to fairly effectuate their remedial purpose." *Clegg v. Conk*, 507 F.2d 1351, 1361 (10th Cir.1974), *cert. denied* 422 U.S. 1007, 95 S.Ct. 2628, 45 L.Ed.2d 669 (1975).

■ Schwartz has pleaded the requisite reliance for his claims to survive a motion to dismiss. Schwartz avers the defendants issued material misrepresentations and failed to disclose material information necessary to prevent misrepresentations. (Compl. ¶¶ 24, 47.) In addition, Schwartz sets forth facts to allege that Celestial stock traded in an efficient market for purposes of a fraud on the market theory. (Compl. ¶ 25.) Lastly, Schwartz pleaded actual reliance on defendants' representations. (Compl. ¶ 97.)

Thus, Schwartz has pleaded his reliance. It remains to be seen, however, whether Schwartz can plead for a class with sufficient specificity facts which, if true, would entitle such a class to a presumption of reliance under *Affiliated Ute* or *Basic Inc. See, e.g., Masri v. Wakefield*, 106 F.R.D. 322 (D.Colo. 1984). "[Q]uestions of reliance are highly factual and thus courts are properly reluctant to dismiss on the pleadings." Thomas L. Hazen, *supra*, § 13.5 at 97–98.

## Adequacy of the Pleadings— Standard for Dismissal

Both motions to dismiss by defendants rely upon Fed.R.Civ.P. 12(b)(6) and 9(b). Rule 12(b) states in relevant part:

"[T]he following defenses may at the option of the pleader be made by motion: ... (6) failure to state a claim upon which relief can be granted.... If, on a motion asserting the defense numbered (6) to dismiss for failure of the pleading to state a claim upon which relief can be granted, matters outside the pleading are presented to and not excluded by the court, the motion shall be treated as one for summary judgment and disposed of as provided in Rule 56...."

Rule 9(b) provides: "In all averments of fraud or mistake, the circumstances constituting fraud or mistake shall be stated with particularity. Malice, intent, knowledge, and other condition of mind of a person may be averred generally."

■ Dismissal is inappropriate under Rule 12(b)(6) unless the plaintiffs can prove no set of facts to support their claims and entitle them to relief. *Boone v. Carlsbad Bancorporation, Inc.*, 972 F.2d 1545, 1551 (10th Cir.1992). At the pleading stage, a court may not dismiss a claim by weighing the evidence which might be presented or by considering the likelihood of success. *Seattle–First Nat'l Bank v. Carlstedt*, 800 F.2d 1008, 1011 (10th Cir.1986). Rather, in determining whether a complaint survives a 12(b)(6) motion, the court must accept the allegations in the complaint as true and construe them in the light most favorable to plaintiffs. *In re Exabyte Corp. Securities Litigation*, 823 F.Supp. 866, 869 (D.Colo. 1993) (citing *Williams v. Meese*, 926 F.2d 994, 997 (10th Cir.1991)).

■ The purpose of requiring particularity in pleading fraud is to provide each defendant with sufficient notice of the misrepresentations alleged so that he can answer and defend himself. *Gardner v. Investors Diversified Capital, Inc.*, 805 F.Supp. 874, 876 (D.Colo.1992).

■ Under Rule 9(b), plaintiffs are not required to plead extensive facts, but they

are required to plead the circumstances constituting fraud. *Id.; Ambraziunas v. Bank of Boulder,* 846 F.Supp. 1459, 1462 (D.Colo. 1994). Plaintiffs, therefore, must " 'set forth the time, place and contents of the false representation, the identity of the party making the false statement and the consequences thereof.' " *Ambraziunas,* 846 F.Supp. at 1462 (quoting *Lawrence Nat'l Bank v. Edmonds,* 924 F.2d 176, 180 (10th Cir.1991)). The failure of a complaint to meet the requirements of Rule 9(b) is grounds for dismissal under Rule 12(b)(6) for failure to state a claim. *Seattle–First,* 800 F.2d at 1011.

## Merits

Count one of the complaint alleges all defendants violated § 11 of the Securities Act[6] and that the Individual Defendants are also liable under § 15 of the Securities Act.[7] Schwartz alleges the registration statement and prospectuses contained untrue statements of material fact and omitted material facts necessary to prevent a misrepresentation.

Count two alleges all defendants violated § 10(b) of the Exchange Act[8] and Rule 10b–5[9] by knowing or recklessly failing to know that the information contained in the releases, prospectuses, registration statement, and reports were material misrepresentations. Count three alleges the Individual Defendants violated § 20(a) of the Exchange Act.[10]

■ Defendants contend Schwartz has failed to meet the particularity requirements for pleading set forth in Rule 9(b). They argue the heightened pleading standard for fraud should be applied to the § 11 claim, the § 10(b) claim, and the Rule 10b–5 claim. Schwartz responds that Rule 9(b) applies only to the § 10(b) and Rule 10b–5 claims but not to the § 11 claim. For the reasons below, I agree with defendants' argument.

6. Section 11 of the Securities Act allows civil liability for false registration statements. In relevant part, § 11 provides:

   (a) In case any part of the registration statement, when such part became effective, contained an untrue statement of a material fact or omitted to state a material fact required to be stated therein or necessary to make the statements therein not misleading, any person acquiring such security (unless it is proved that at the time of such acquisition he knew of such untruth or omission) may, either at law or in equity, in any court of competent jurisdiction, sue—

   (1) every person who signed the registration statement;

   (2) every person who was a director of (or person performing similar functions) or partner in the issuer at the time of the filing of the part of the registration statement with respect to which his liability is asserted;

   (3) every person who, with his consent, is named in the registration statement as being or about to become a director, person performing similar functions, or partner;

   (5) every underwriter with respect to such security.

7. Section 15 of the Securities Act establishes liability for control persons:

   Every person who, by or through stock ownership, agency, or otherwise, or who, pursuant to or in connection with an agreement or understanding with one or more other persons by or through stock ownership, agency, or otherwise, controls any person liable under [section 11], shall also be liable jointly and severally with and to the same extent as such controlled person to any person to whom such controlled person is liable, unless the controlling person had no knowledge of or reasonable grounds to believe in the existence of the facts by reason of which the liability of the controlled person is alleged to exist.

8. Section 10(b) of the Exchange Act states:

   It shall be unlawful for any person, directly or indirectly, by the use of any means or instrumentality of interstate commerce or of the mails, or of any facility of any national securities exchange—

   (b) To use or employ, in connection with the purchase or sale of any security registered on a national securities exchange or any security not so registered, any manipulative or deceptive device or contrivance in contravention of such rules and regulations as the Commission may prescribe as necessary or appropriate in the public interest or for the protection of investors.

9. Rule 10b–5 forbids any person in connection with the purchase or sale of any security,

   (1) To employ any device, scheme, or artifice to defraud,

   (2) To make any untrue statement of a material fact or to omit to state a material fact necessary in order to make the statements made, in the light of the circumstances under which they were made, not misleading, or

   (3) To engage in any act, practice, or course of business which operates or would operate as a fraud or deceit upon any person....

   17 C.F.R. § 240.10b–5 (1995).

10. Section 20(a) of the Exchange Act provides liability for control persons.

Two types of cases arise under § 11 of the Securities Act: those resting on negligence and those sounding in fraud. *See Shapiro v. UJB Financial Corp.*, 964 F.2d 272, 287–289 (3d Cir.), *cert. denied*, —— U.S. ——, 113 S.Ct. 365, 121 L.Ed.2d 278 (1992) (discussing the differences between the two types of claims). In the Tenth Circuit, Rule 9(b)'s particularity requirement applies generally in securities fraud cases. *Seattle–First*, 800 F.2d at 1010; *accord Shapiro*, 964 F.2d at 288. *See generally*, Thomas L. Hazen, *supra*, § 13.2.1 at 66–67 (particularity in pleading fraud applies to any securities claim "sounding in fraud").

Schwartz's complaint is littered with repetitious allegations regarding the deliberately unlawful conduct of defendants. For example, Schwartz alleges the Individual Defendants engaged in unlawful conduct to maintain an artificially high price for Celestial stock and to conceal material information from the public. "[E]ach Individual Defendant knew or recklessly disregarded" the undisclosed material facts and the misleading nature of statements made. (Compl. ¶ 22.) "Celestial fraudulently advised, stated and confirmed to analysts and other stock market professionals that, as a result of the Perrier Agreement, Celestial would soon enjoy increasing sales and profits in the ready-to-drink iced tea market." (Compl. ¶ 24.)

Schwartz further alleges the defendants "knowing[ly] or recklessly disregard[ed]" the inadequacy of Perrier's distribution system for Celestial's marketing objectives. (Compl. ¶ 44.) Indeed, the first paragraph of the complaint states the case is brought on behalf of "defrauded purchasers."

Schwartz grounds his securities claims in allegations of deliberate acts by defendants to defraud purchasers through the concealment of material information. These claims sound in fraud and are, therefore, subject to the pleading requirements of Rule 9(b).

Throughout all seven counts in the complaint, Schwartz invokes generic labels such as "all defendants," "individual defendants," and "all defendants except Celestial." [11] This form of group pleading has been rejected as insufficient to satisfy Rule 9(b). *See In re Storage Technology Corp. Sec. Litig.*, 804 F.Supp. 1368, 1372–73 (D.Colo.1992) ("The parties have not cited and I find no Tenth Circuit authority supporting adoption of the group pleading rule in this circuit.").

Rule 9(b) requires pleading of the circumstances constituting fraud rather than detailed facts. Prolixity, however, is not an acceptable substitute for specificity: a plaintiff must set forth the time, place and contents of the misrepresentations, the identity of the party making them and the resultant consequences. Schwartz has failed to do so.

In count one, Schwartz relies upon the registration statement and prospectus to demonstrate a § 11 violation. Schwartz presumably refers to those documents involved with the IPO and not the January 1994 offering, but fails so to state. Schwartz also fails to reveal the contents of the misrepresentations by at least enumerating which paragraphs in the complaint contain them. (Compl. ¶ 85.) For example, ¶ 47 provides several allegations of material misrepresentations but lists "the Prospectuses and marketing materials" as the sources. Schwartz has not clarified the marketing materials to which he refers. From this type of pleading it is impossible to know which of the first 80 paragraphs within the complaint are intended to apply to Schwartz's first count.

Count two of the complaint is against all defendants and again fails to identify the specific misrepresentations made and which defendants are alleged to have made them. For example, Schwartz alleges in ¶ 94 that defendants committed fraud by approving releases, prospectuses, statements, and reports "as referred to above." In ¶ 96 Schwartz avers "[b]y reason of the conduct alleged herein" defendants violated § 10(b) and Rule 10b–5 and then paraphrases Rule 10b–5. Count two therefore fails the particularity requirements of Rule 9(b) for the same reasons as did count one.

In sum, the complaint amounts to eighty paragraphs of scattered allegations—some more specific than others—which are then lumped together generally in Schwartz's federal securities claims. While Schwartz has

---

11. As noted earlier, Schwartz, whether inadvertently or intentionally, has omitted defendant O'Connell from the group of Individual Defendants.

pleaded detailed facts in the first eighty paragraphs of his complaint, he has failed to identify the circumstances constituting fraud upon which his various securities claims rely. Schwartz's complaint fails to meet the particularity requirements of Rule 9(b) because it does not adequately identify (1) the time, place and contents of the misrepresentations or omissions; (2) the identity of the party alleged to have made the misrepresentations or omissions; and (3) the consequences of those misrepresentations or omissions. Accordingly, I grant defendants' motions to dismiss the § 11, § 10(b) and Rule 10b–5 claims in counts one and two without prejudice.

### Control Person Liability

Schwartz further alleges in count one that the Individual Defendants are signatories and/or directors and/or controlling persons. (Compl. ¶ 85.) Schwartz then contends each individual is a controlling person under § 15 of the Securities Act. (Compl. ¶ 90.) Similarly, count three alleges liability for the Individual Defendants due to their positions as controlling persons pursuant to § 20(a) of the Exchange Act. (Compl. ¶¶ 98–100.)

■ The analysis for control person liability is identical for § 15 of the Securities Act and § 20(a) of the Exchange Act. *First Interstate Bank of Denver v. Pring,* 969 F.2d 891, 897 (10th Cir.1992), *rev'd on other grounds sub nom. Central Bank of Denver v. First Interstate Bank of Denver,* —— U.S. ——, 114 S.Ct. 1439, 128 L.Ed.2d 119 (1994). As an element of the prima facie case, a primary violation of the securities laws must be established. *Id.*

■ Because Schwartz has failed to plead a claim adequately under either the Securities Act or the Exchange Act, the control person liability claims fail accordingly. Thus Schwartz's § 15 and § 20(a) claims in counts I and III of his complaint are dismissed without prejudice.

### The Remaining Claims

In light of the above conclusion to dismiss the federal securities claims, counts four and five regarding Colorado securities law violations, count six regarding negligent misrepresentation and count seven regarding com-

mon law fraud are dismissed also without prejudice. Without the subject matter jurisdiction provided by the federal securities claims, there is no case or controversy necessary to assert supplemental jurisdiction over the remaining allegations.

### Conclusion

Defendants' motions to dismiss are granted for Schwartz's failure to meet the particularity requirements of Fed.R.Civ.P. 9(b). Defendants' remaining arguments are left for later determination in the event a properly pleaded complaint is filed. In such a complaint, the state law claims, if any, must be also pleaded with particularity or they will be stricken. It remains plaintiff's burden to persuade this court to entertain supplemental jurisdiction.

Out of an abundance of caution, the dismissal of this complaint is without prejudice. I could find no securities case in which a dismissal of the first complaint filed resulted in a dismissal with prejudice. The heft of the rulings seems to allow two bites of the apple. I will not, however, permit discovery on the basis of the confusing and conjectural complaint just dismissed. To do so would countenance a "shoot first, aim later" practice which Rule 9(b) is intended to prohibit. If, indeed, charges of fraud are to be taken seriously, they must be seriously pleaded with specificity and due awareness of the harm caused by the mere accusation of them. Plaintiff has twenty days from the date of this order to replead. Any such amended pleading shall be filed in this civil action. If the amended pleading fails to adhere to the requirements of Rule 9(b) and the rulings in this opinion, I will consider imposing sanctions *ex mero motu.* If no amended complaint is filed within twenty days hereof, this civil action will be dismissed with prejudice.