Howard ROSENTHAL, on behalf of
himself and all others similarly
situated, Plaintiff,

v.

DEAN WITTER REYNOLDS, INC., Castle
Pines Land Company, Frank B. Walker,
Jack A. Vickers III, Helen McMaster
Coulson, William B. Graham, and Larry
Reichert, Defendants.

Civil Action No. 91–K–591.

United States District Court,
D. Colorado.

Sept. 26, 1996.

Order Denying Reconsideration
Nov. 6, 1996.

Patrick D. Vellone, James Puga, Vinton Nissler Allen & Vellone, Denver, CO, Bruce E. Gerstein, Garwin Bronzaft Gerstein & Fisher, New York City, Eugene A. Spector, Paul J. Scarlato, Debra M. Kahn, Philadelphia, PA, Richard P. Slivka, Freeborn & Peters, Denver, CO, for plaintiff.

Thomas D. Birge, Cathryn B. Mayers, Birge & Mayers, P.C., Denver, CO, Charles F. Brega, Wesley B. Howard, Brega & Winters, P.C., Denver, CO, Andrew J. Friedrich, Kerr Friedrich Brosseau Bartlett, Denver, CO, for defendants.

## MEMORANDUM OPINION AND ORDER

KANE, Senior District Judge.

This securities fraud action was dismissed without prejudice after the Supreme Court issued its decision in *Lampf, Pleva, Lipkind, Prupis & Petigrow v. Gilbertson*, 501 U.S. 350, 111 S.Ct. 2773, 115 L.Ed.2d 321, *reh'g denied*, 501 U.S. 1277, 112 S.Ct. 27, 115 L.Ed.2d 1109 (1991). *Lampf* established a three-year statute of limitations for such actions and Plaintiff conceded his claims were time-barred under that case. When Congress passed a law providing a 60–day period for reinstating claims dismissed as time-barred under *Lampf*, Plaintiff moved for reinstatement. Judge Finesilver denied the motion.

While Plaintiff's appeal of the denial was pending, the Supreme Court invalidated the law on which the motion was based to the extent it ordered courts to reopen final judgments of the judiciary. *Plaut v. Spendthrift Farm, Inc.*, —— U.S. ——, 115 S.Ct. 1447, 131 L.Ed.2d 328 (1995). The Tenth Circuit remanded the case to the district court, stating the court "should address *Plaut's* effect on this case, if any." *Rosenthal v. Dean Witter*, 82 F.3d 426 (TABLE), 1996 WL 165297, *4 (10th Cir. April 9, 1996).

Before me is the third motion by defendant Dean Witter Reynolds, Inc. ("Dean Witter") to dismiss the Amended Complaint in

this action. Dean Witter asserts Plaintiff's claims are time-barred under *Lampf* and *Plaut.* Alternatively, Dean Witter asserts Rosenthal's claims should be dismissed (1) for failure to allege reliance under the fraud-in-the-market theory; (2) for failure to allege fraud with the requisite particularity required by Rule 9(b), Fed.R.Civ.P; and (3) because § 10(b) claims based on allegedly fraudulent statements regarding future prospects are not actionable under the "bespeaks caution" doctrine.

I agree Rosenthal's claims are untimely and find they were never subject to reinstatement. I therefore grant the motion.

## I. BACKGROUND AND PROCEDURAL HISTORY.

In 1986, Dean Witter underwrote an issue of special district bonds by Castle Pines North Metropolitan District (the "District"). The District was created for the purpose of providing the constructing and installing of water, sanitary sewer and street improvements on 1,603 acres of land located in Douglas County, Colorado. The land was being developed by defendant Castle Pines Land Company ("Castle Pines").

Howard Rosenthal, a Pennsylvania resident, purchased $25,000 of these bonds in the initial offering on July 17, 1986 from his Dean Witter broker in Philadelphia. The bonds defaulted, and on November 14, 1990, the District filed for bankruptcy.

Rosenthal initiated this securities lawsuit on behalf of himself and others similarly situated on April 11, 1991, naming Dean Witter and others as defendants. He amended his Complaint on July 3, 1991. Rosenthal alleged the "Official Statement" pursuant to which the bonds were issued contained material misstatements and omissions regarding the risks of the investment and future prospects for completing the Castle Pines development. Relying on a "fraud-created-the-market" theory of reliance, Rosenthal alleged Defendants wrongfully induced him to purchase the bonds by publishing false and misleading statements in the Official Statement. Specifically, Rosenthal asserted claims for violation of Section 10(b) and Rule 10b–5 of the Securities and Exchange Act of 1934, 15 U.S.C. § 78j(b); for violation of Colorado's statutory analogs to § 10(b) and Rule 10b–5, Colo.Rev.Stat. §§ 11–51–123, 125; and for common law fraud.

On July 16, 1991, Rosenthal filed a nearly identical action in Colorado state court. That case, Civil Action No. 92–CV–429, Div. 2 in Douglas County District Court, is pending.

The procedural meanderings that followed bear illumination, if only as a means of explaining why, more than five years after suit was filed and ten years after the subject bonds were purchased, there is still no scheduling order in effect in this case.

The proceedings form a montage of the changing landscape in federal securities litigation and the difficulties facing courts attempting to manage securities case. *See generally Olcott v. Delaware Flood Co.,* 76 F.3d 1538 (10th Cir.1996) (where Judge Porfilio details the "Byzantine proportions" of a similar securities fraud case). Given Congress's enactment last December of the Private Securities Litigation Reform Act, which heightens pleading and other requirements for initiating private securities fraud litigation, and the proclivity of state courts to liberalize those requirements, *see Rosenthal v. Dean Witter,* 908 P.2d 1095 (Colo.1995), *reh'g denied* (Jan. 29, 1996), there is little hope the fog will lift any time in the foreseeable future. The map still reads *terra incognita.*

On July 21, 1991, the Supreme Court issued its decision in *Lampf.* The decision articulated a one-year/three year statute of limitations for all future and then-pending § 10(b) actions: such actions would have to be brought within one year after the discovery of the alleged fraud, but in no event more than three years after the violation giving rise to the claim. *Lampf,* 501 U.S. at 362, 111 S.Ct. at 2781–82. On July 22, 1991, Rosenthal filed a request to hold the federal action in abeyance, agreeing to dismiss the action if the Supreme Court denied the petition for rehearing in *Lampf.* On July 24, 1991, Judge Finesilver entered an order administratively closing the action pending the Supreme Court's decision on the petition for rehearing.

The Supreme Court denied the petition for rehearing in *Lampf* on September 21, 1991. Rosenthal moved for dismissal, and on September 23, 1991, Judge Finesilver dismissed Rosenthal's § 10(b) claim and related state law claims without prejudice. The parties were ordered to pay their own costs.

On December 19, 1991, Congress enacted legislation requiring the application of pre-*Lampf* state law statutes of limitations to § 10(b) actions pending at the time *Lampf* was decided, and ordering courts to reinstate actions that had been dismissed under *Lampf*. *See* Section 27A(a) & (b) of the Securities Exchange Act of 1934 (§ 476 of the Federal Deposit Insurance Corporation Improvement Act of 1991 (codified at 15 U.S.C. § 78aa–1 (1994))). Pursuant to § 27A(b), Rosenthal filed a motion on February 7, 1992 to reinstate his claims. Rosenthal also moved to stay the action, however, expressing his "inten[t] to proceed with the State Court Action which is far advanced as to substantial motions and discovery from the present action for which a Motion for Reinstatement has only just been filed." Mot. to Stay (filed Feb. 7, 1992), ¶ 6.

On February 10, 1992, before Judge Finesilver had ruled on either motion, the state court issued a substantive ruling dismissing Rosenthal's securities claims for failure adequately to allege reliance. Judge Finesilver granted Rosenthal's Motion to Withdraw Motion for Stay the following day.

In its opposition to Rosenthal's Motion for Reinstatement, Dean Witter argued § 27A violated separation of powers principles and was unconstitutional. Judge Finesilver agreed and denied Rosenthal's motion, find-

ing that in enacting § 27A, Congress acted as a " 'super-appellate court' " and usurped powers reserved for the courts. *See* Order (dated June 15, 1992) at 8–9. Rosenthal appealed. Based on its then-recent ruling in *Anixter v. Home–Stake Prod. Co.*, 977 F.2d 1533, 1547 (10th Cir.1992) upholding § 27A's constitutionality (*Anixter III* )[1], the Tenth Circuit reversed and remanded the case to Judge Finesilver. *Rosenthal v. Dean Witter*, No. 92–1215, 1992 WL 372582 (10th Cir. Dec. 17, 1992) (Order and Judgment), *cert. denied*, 508 U.S. 909, 113 S.Ct. 2339, 124 L.Ed.2d 249 (1993).

On remand Dean Witter again moved to dismiss, urging preclusive effect be given the state court's dismissal of Rosenthal's claims on 12(b)(6) and 9(b) grounds. Judge Finesilver granted Dean Witter's motion, and Rosenthal again appealed. The Tenth Circuit abated this second appeal pending the outcome of Rosenthal's appeal of the state court decision to the Colorado Supreme Court.

While the state and federal appeals were pending, the United States Supreme Court decided *Plaut v. Spendthrift Farm, Inc.*, —— U.S. ——, 115 S.Ct. 1447, 131 L.Ed.2d 328 (1995). In *Plaut*, the Court invalidated § 27A(b) "to the extent that it requires federal courts to reopen final judgments entered before its enactment." *Id.* at ——, 115 S.Ct. at 1463; *see generally* Harold S. Bloomenthal and Samuel Wolff, *Emerging Trends in Securities Law* § 1.03 (1995–96 ed.1995). After the Colorado Supreme Court reversed the dismissal of Rosenthal's state claims in *Rosenthal v. Dean Witter*, 908 P.2d 1095 (Colo. 1995),[2] the Tenth Circuit again remanded the case to this court, but with instructions to

---

**1.** This was the third in a series of five opinions issued by the Tenth Circuit in the *Anixter* securities litigation. In *Anixter I*, 939 F.2d 1420 (10th Cir.1991), the Tenth Circuit dismissed plaintiffs' claims under *Lampf*. That decision was reaffirmed on rehearing in *Anixter II*, 947 F.2d 897 (10th Cir.1991). In *Anixter III*, the court upheld § 27A's constitutionality as it applied to plaintiffs' claims and in *Anixter IV*, 977 F.2d 1549 (10th Cir.1992), upheld the damages award. After twenty-three years of litigation, the court in *Anixter V*, 77 F.3d 1215 (10th Cir.1996), concluded an erroneous jury instruction had "hopelessly tainted" the general verdict and remanded the case for a new trial. While this litigation has

faint hope of achieving immortality, it has every promise of being eternal.

**2.** In a departure from the trend in the federal courts, the Colorado Supreme Court found conclusory allegations that defendants' fraud "caused plaintiff's harm" sufficient to state a cause of action under the Colorado analog. *See, e.g., Basic Inc. v. Levinson*, 485 U.S. 224, 243, 108 S.Ct. 978, 989–90, 99 L.Ed.2d 194 (1988), *applied in Schwartz v. Celestial Seasonings*, 904 F.Supp. 1191, 1197–98 (D.Colo.1994). *See also*, Cathy Stricklin Krendl, *The Securities Act of 1981: A Reduction in Duplicate Regulation*, 10 Colo.Law. 2158, 2170–71 (Sept.1981).

"address *Plaut's* effect on this case, if any." *Rosenthal v. Dean Witter,* 1996 WL 165297, *4. This third motion to dismiss followed.

## II. *DISCUSSION.*

### A. *Statute of Limitations.*

■ The question to be determined is the effect of *Plaut* on an action that was voluntarily dismissed, rather than reduced to final judgment, under *Lampf.* Rosenthal argues *Plaut* has no effect on his claims because reinstatement would not operate to reopen a final judgment: His claims were dismissed upon his own motion, rather than after a judgment on the merits, and were without, rather than with prejudice. Dean Witter denies the distinction is material, arguing the dismissal created "precisely the type of 'finality' that cannot be disturbed under the mandate of *Plaut.*" Reply Br. at 4.

Both the Tenth and Fifth Circuits have addressed the issue of finality set forth in *Plaut.* In *Anixter V,* the Tenth Circuit looked to the appealability versus nonappealability of the case at the time § 27A was enacted to determine whether or not the case was "final" for the purposes of *Plaut.* 77 F.3d at 1223 (" '[f]or purposes of retroactive legislation, a case is final only after the availability of appeal is exhausted, and the time for a petition for certiorari has elapsed or the petition has been denied.' ") (quoting *Johnston v. Cigna Corp.,* 14 F.3d 486, 489 & n. 4 (10th Cir.1993), *cert. denied* — U.S. —, 115 S.Ct. 1792, 131 L.Ed.2d 720 (1995)). Because the Anixter plaintiffs' petition for certiorari was pending before the Supreme Court at the time § 27A was enacted, the Tenth Circuit concluded the case was not "final" and that *Plaut* did not apply. *Id.*

In *TGX Corp. v. Simmons,* 62 F.3d 666 (5th Cir.1995), the Fifth Circuit declined to attribute significance to the fact plaintiffs' claims were dismissed without, rather than with, prejudice in considering the effect of *Plaut* on plaintiffs' appeal. The court reasoned that "*Plaut* turned not on the fact that the judgments Congress chose to set aside through retroactive legislation were with prejudice, but on the fact that they were *final* judgments" on the merits of the statute of limitations defense under *Lampf.* 62 F.3d

at 667 (emphasis original). Relying on the fact that the *TGX* judgments were "final, nonappealable judgments," the Fifth Circuit concluded *Plaut* applied and rendered any application of § 27A to reinstate plaintiffs' claims unconstitutional.

Invoking *Anixter V,* Dean Witter argues Rosenthal's failure to appeal Judge Finesilver's September 23, 1991 order rendered it "final" before § 27A was enacted on December 19, 1991. Rosenthal counters that his "time for appeal had not yet begun to run" as of December 19, 1991, because Judge Finesilver's order had never been reduced to judgment under Fed.R.Civ.P. 58. Both arguments are silly to the extent they posit that an order granting a motion for voluntary dismissal would ever be appealed by the movant. Equally irrelevant is Rosenthal's contention that a dismissal "without prejudice" based on plaintiff's motion, rather than an adjudication on the merits as in *TGX,* is not a "final judgment" for purposes of *Anixter V.* The *Johnston* finality test applied in *Anixter V* is simply inapposite in the case of a dismissal under Rule 41(a)(2).

The salient issue is the practical effect of a dismissal "without prejudice" on the applicability of § 27A under *Plaut.* After *Plaut,* the only actions subject to reinstatement under § 27A(b) are those that had not yet "made [their] way through the courts" at the time it was enacted. *Anixter,* 77 F.3d at 1223. Because actions dismissed "without prejudice" cease to exist, Congress could not order the "reinstatement" of an action previously dismissed "without prejudice" without running afoul of *Plaut.*

A voluntary dismissal without prejudice leaves the situation as if the action never had been filed. *Brown v. Hartshorne Public School Dist. No. 1,* 926 F.2d 959, 961 (10th Cir.1991) (citing 9 Wright & Miller, *Federal Practice and Procedure* § 2367 (1st ed. 1971)). "[A] voluntary dismissal wipes the slate clean, making any future lawsuit based on the same claim an entirely new lawsuit unrelated to the earlier (dismissed) action." *Sandstrom v. ChemLawn Corp.,* 904 F.2d 83, 86 (1st Cir.1990). Thus, once Rosenthal's action was dismissed on September 23, 1991, his only recourse was to file a new action.

Such an action would not have "related back" to the original action for statute of limitations purposes and could not, for the purposes of § 27A, have been "commenced on or before June 19, 1991." [3]

I conclude Rosenthal's claims were never subject to § 27A and, therefore, are time-barred under *Lampf*. Mindful of this case's long history and in an effort to avoid even further delay, I will go on, in the alternative, to consider Dean Witter's other arguments in support of its motion to dismiss.

### B. *The Adequacy of Rosenthal's Factual Allegations—Reliance.*

Dean Witter argues Rosenthal's Amended Complaint should be dismissed for failure to allege reliance under the fraud-created-the-market theory and for failure to plead fraud with particularity as required under Rule 9(b), Fed.R.Civ.P. I agree. Thus, even if Rosenthal's claims were subject to reinstatement under § 27A, they would be subject to dismissal under Rule 12(b).

■ Reliance is the element of a § 10(b) claim that provides the causal connection between the alleged misconduct and the plaintiff's injury. *Basic Inc. v. Levinson,* 485 U.S. 224, 243, 108 S.Ct. 978, 989–90, 99 L.Ed.2d 194 (1988), *applied in T.J. Raney & Sons, Inc. v. Fort Cobb, Oklahoma Irrigation Fuel Authority,* 717 F.2d 1330, 1332 (10th Cir.1983) *and Schwartz v. Celestial Seasonings, Inc.,* 904 F.Supp. 1191, 1198 (D.Colo. 1995). While there "is more than one way to demonstrate the causal connection," *Basic,* 485 U.S. at 243, 108 S.Ct. at 989, it is a fundamental and necessary element of a claim under the Act. *Central Bank of Denver, N.A. v. First Interstate Bank of Denver, N.A.,* 511 U.S. 164, ——, 114 S.Ct. 1439, 1449, 128 L.Ed.2d 119 (1994).

In the present case, Rosenthal does not claim to have relied directly on the Official Statement (or even to have read it) in purchasing the Bonds. Instead, he claims he is entitled to a presumption of reliance under the "fraud-created-the-market" doctrine.

The Fifth Circuit recognized the fraud-created-the-market doctrine in *Shores v. Sklar,* 647 F.2d 462 (1981) *(en banc ), cert. denied,* 459 U.S. 1102, 103 S.Ct. 722, 74 L.Ed.2d 949 (1983). The Tenth Circuit adopted the doctrine in *T.J. Raney,* 717 F.2d at 1332–33, agreeing that a plaintiff may recover under Rule 10b–5 if he proves

'(1) the defendants knowingly conspired to bring securities onto the market which were not entitled to be marketed, intending to defraud purchasers; (2) [plaintiff] reasonably relied on the Bonds' availability on the market as an indication of their apparent genuineness, and (3) as a result of the scheme to defraud [plaintiff] suffered a loss.'

717 F.2d at 1332 (quoting *Shores* at 469–70).

■ The "fraud-created-the-market" doctrine, which permits a plaintiff to maintain an action under § 10(b) by proving that the defendant's fraud allowed securities to come into and exist in the market that otherwise would have been unmarketable, is to be distinguished from the "fraud-on-the-market" doctrine, which recognizes that in an open and developed market, the price of a security reflects the appropriate synthesis of all relevant information regarding a security, including material misrepresentations. *Basic,* 485 U.S. at 241–45, 108 S.Ct. at 988–91, *distinction discussed in Arena Land & Inv. Co., Inc. v. Petty,* 906 F.Supp. 1470, 1481 (D.Utah 1994), *aff'd* 69 F.3d 547 (10th Cir.1995). It is the former theory that applies in the case of public offerings of securities such as bonds, where, as here, there is no pre-existing established market.

■ In *Raney,* the Tenth Circuit explained the rationale for the "fraud-created-the-market" doctrine as being that purchasers should be permitted, given federal and state regulation of new securities, to assume new securities "were lawfully issued." 717 F.2d at 1333. Because the bonds in that case were issued in contravention of Oklahoma law, the Tenth Circuit held plaintiffs were entitled to a presumption of reliance. *Id.*

---

3. Section 27A(b) provides that any private civil action under § 10(b) "that was commenced on or before June 19, 1991 ... [and] which was dismissed as time barred subsequent to June 19,

1991 ... shall be reinstated on motion by the plaintiff not later than 60 days after December 19, 1991." 15 U.S.C. § 78aa–1 (1988 ed., Supp. V).

Rosenthal does not allege the Bonds were unlawfully issued; rather, he asserts the Bonds were "unworthy" of trading in a regulated securities market. *See* Pl.'s Reply at 11. According to Rosenthal, the misrepresentations and omissions in the Official Statement were "so egregious" that no investor would have purchased the Bonds had they known how "little, if any," chance the development had "of supporting the payments necessary to retire the 1986 Bonds." Am. Compl. ¶ 14. Specifically, Rosenthal contends: (1) Defendants knew the overall growth and revenue projections in the Official Statement were either incorrect or lacked any reasonable basis (Am.Compl. ¶ 60(a)); (2) Defendants failed to disclose either a substantial downturn in the economy before the Bonds were issued (*id.* ¶ 60(b)) or that Castle Pines had been experiencing financial problems that led to the issuance of the Bonds as a secret means of replenishing its lines of credit (¶ 60(c)); (3) Defendants failed to disclose that the mill levy rate would generate insufficient revenue to retire the Bonds (¶ 60(d)); and (4) Defendants failed to disclose substantial problems with fee collections and that related projections were therefore intentionally inflated or lacked any reasonable basis. *Id.* ¶ 60(g).

Dean Witter asserts these allegations are insufficient, as a matter of law, to support an inference of presumptive reliance under the "fraud-created-the-market" doctrine. I agree.

Judge Sam of the United States District Court for the District of Utah addressed the sufficiency of "fraud-created-the-market" allegations in a decision recently affirmed by the Tenth Circuit. *See Arena Land & Inv. Co., Inc. v. Petty,* 906 F.Supp. 1470, 1481 (D.Utah 1994), *aff'd* 69 F.3d 547 (10th Cir. 1995).

The fraud-created-the-market theory, Judge Sam explained,

'is a circular theory based on faith in the market itself. The theory presumes the securities market is legitimate, and that buyers rely on its legitimacy. As a result, the theory recognizes that the market inevitably confers legitimacy on all of its products; in effect, the market certifies that each traded security has some value. Because of this certification, buyers may presume any traded security in the market must be worth at least something, or else it would not be there.'

906 F.Supp. at 1481 (quoting *Gruber v. Price Waterhouse,* 776 F.Supp. 1044, 1052 (E.D.Pa. 1991)). In *Gruber,* the court went on to hold that the "'fraud-created-the-market' [doctrine] only applies where the underlying business is an absolute sham, worthless from the beginning." *Gruber,* 776 F.Supp. at 1052–53, *quoted in Arena Land,* 906 F.Supp. at 1481. "The causal relationship between a defendant's purported fraud and a plaintiff's injury 'is established by alleging and proving that the securities could not have been marketed at *any price* absent fraud.'" *Id.* (quoting *Freeman v. Laventhol & Horwath,* 915 F.2d 193, 200 (6th Cir.1990)) (emphasis added).

The theory, Judge Sam concluded, appears to be based on "'some illegality in the process of issuing the securities.'" *Id.* (quoting *Kelley v. Mid–America Racing Stables, Inc.,* 139 F.R.D. 405 (W.D.Okla.1990)). Accordingly, he found plaintiff's conclusory allegations that defendants had embarked on a fraudulent scheme to market "unmarketable securities" inadequate to justify a presumption of reliance under the fraud-created-the-market theory. *Id.* at 1482.

Rosenthal's allegations in the instant case fall far short of establishing that fraud "created" the market for the 1986 Bonds. Rosenthal does not claim the Bonds "could not have been marketed at any price"; to the contrary, he concedes they "had some economic worth." Reply Br. at 11. I conclude Rosenthal has failed to allege reliance under any cognizable theory of relief.

In doing so, I emphasize the fact that both the "fraud-created-the-market" and "fraud-on-the-market" doctrines are exceptions to the general rule that plaintiffs must demonstrate *actual* reliance to prevail on a claim for securities fraud. As exceptions, they are to be construed narrowly. Accordingly, the circumstances under which the Tenth Circuit recognized the doctrine of "fraud-created-the-market" in *T.J. Raney* should be the high

water mark for its application. The doctrine should not be extended, as Rosenthal wishes, to the point that reliance is presumed simply because bonds issued during an economic upswing are later defaulted upon. The purpose of the securities laws is to maintain a credible market, not to create one that is risk-free, which would amount to no market at all. Moreover, the purpose of securities litigation is to support and protect the established credible market, not to create or nurture a separate industry of its own.

Finally, I note other circuits have declined to apply the "fraud-created-the-market" doctrine on the facts of cases that have reached them. *See Ockerman v. May Zima & Co.,* 27 F.3d 1151 (6th Cir.1994) *and Freeman,* 915 F.2d 193 (6th Cir.1990). I note further that the Seventh Circuit has rejected it entirely. *Eckstein v. Balcor Film Investors,* 8 F.3d 1121 (7th Cir.1993). I abide with the Tenth Circuit's assertion that there is a place for the doctrine in our securities jurisprudence, but it is reserved for those cases in which fraud truly "created" the market. *See Gruber,* 776 F.Supp. at 1052–53.

### III. CONCLUSION.

The federal securities fraud claims brought by Plaintiff Howard Rosenthal against Dean Witter and the other named Defendants fail as a matter of law. As an initial matter, the claims are time-barred under *Lampf, Pleva, Lipkind, Prupis & Petigrow v. Gilbertson,* 501 U.S. 350, 111 S.Ct. 2773, 115 L.Ed.2d 321, *reh'g denied,* 501 U.S. 1277, 112 S.Ct. 27, 115 L.Ed.2d 1109 (1991). They were never subject to reinstatement under § 27A(b) of the Securities Exchange Act of 1934 because they were dismissed without prejudice before § 27A(b) was enacted. At that point, they could be revived only by the initiation of an entirely new action. That action would have been filed after the Supreme Court's decision in *Lampf* and would, therefore, fall outside the scope of actions affected by § 27A(b).

Even if Rosenthal's federal claims were not time-barred, they are subject to dismissal under Rule 12(b) of the Federal Rules of Civil Procedure for failure to allege reliance under any cognizable theory of relief. Accordingly, I decline to address Defendants' arguments under the "bespeaks caution" doctrine or Rule 9(b). The pending motion for class certification is mooted.

Based on the foregoing, Plaintiff's claims under the Securities Exchange Act of 1934 are DISMISSED. No federal claims remain to provide a basis for exercising supplemental jurisdiction over Rosenthal's state law claims. Accordingly, Dean Witters' Motion to Dismiss Plaintiff's Amended Complaint in its entirety is GRANTED. The action is DISMISSED and all remaining pending motions denied as MOOT.

## ORDER ON MOTION TO RECONSIDER

Plaintiff Howard Rosenthal moves for reconsideration of my September 25, 1996 Memorandum Opinion and Order dismissing his complaint in this securities fraud action. I reaffirm my order.

Rosenthal urges two grounds for reconsideration: (1) that the dismissal of his complaint was "manifestly unjust"; and (2) that this court misapprehended the fraud-created-the-market doctrine as applied in this circuit in *T.J. Raney & Sons, Inc. v. Fort Cobb Oklahoma Irrigation Fuel Auth.,* 717 F.2d 1330 (10th Cir.1983).

### A. Manifest Injustice.

With respect to the first argument, Rosenthal contends it is manifestly unjust to "punish" him for voluntarily dismissing his claim, rather than maintaining an invalid one, after the petition for rehearing of *Lampf, Pleva, Lipkind, Prupis & Petigrow v. Gilbertson,* 501 U.S. 350, 111 S.Ct. 2773, 115 L.Ed.2d 321 (1991), was denied. Rosenthal relies on *Smith v. Mount Sinai Hosp. & Medical Ctr.,* 1990 WL 33576 (S.D.N.Y.1990) and *Gutierrez v. Vergari,* 499 F.Supp. 1040 (S.D.N.Y.1980) to support his request for equitable relief. I am unpersuaded.

As an initial matter, both *Smith* and *Gutierrez* involved *pro se* plaintiffs. Rosenthal has been represented throughout these proceedings. Further, neither *Smith* nor *Gutierrez* supports a finding of manifest injustice in this case.

In *Smith,* the court expressly declined to carve out an equitable exception for the *pro se* plaintiff, recognizing statutes of limitations

are jurisdictional in nature and must be enforced. 1990 WL 33576 at *3, n. 1. In *Gutierrez*, plaintiffs initiated a *pro se* action one day before expiration of the limitations period and filed a second *pro se* complaint in the same court two months later. For the convenience of the court and the parties, it was agreed the first complaint would be dismissed. At the time, neither the court nor the *pro se* plaintiffs realized that the dismissal would create a statute of limitations problem. The court recognized these "unusual" circumstances in tolling the statute of limitations, distinguishing the case before it from the usual case where, as here, there was an actual interval after the expiration of the limitations period during which no action was pending and defendants may have justifiably relied on the repose provided by the statute of limitations. 499 F.Supp. at 1049–50, n. 9.

Finally, Rosenthal is not left without a forum for his claims. His state court action remains pending before the state District Court in Douglas County; he is losing but one of two bites of the same apple.[1] Under these circumstances, I agree Rosenthal's request for equitable relief is neither persuasive nor compelling.

## B  *Fraud–Created–the–Market.*

A motion for reconsideration is proper when the court has "made a mistake not of reasoning but of apprehension ... [or] if there has been a significant change or development in the law or facts since submission." *EEOC v. Foothills Title Guar. Co.*, 1991 WL 61012 at *3 (D.Colo. April 12, 1991), *aff'd*, 956 F.2d 277 (10th Cir.1992); *see Major v. Benton*, 647 F.2d 110, 112 (10th Cir.1981)

(explaining the law of the case doctrine generally requires a court to adhere to its rulings in the interest of expeditious resolution of disputes and to prevent continued reargument of issues already decided).

Rosenthal argues I misapprehended and "directly contradict[ed]" the law in this circuit when I concluded, in *dicta*,[2] that he could not invoke the fraud-created-the-market doctrine presumption of reliance. By alleging Defendants "knowingly conspired to bring securities into the market which were not entitled to be marketed," Rosenthal maintains he satisfied the pleading requirements set forth in *Raney*. I disagree.

As set forth in my Memorandum Opinion and Order, the rationale underlying the fraud-created-the-market doctrine in *Raney* is that investors are entitled to assume "new securities 'were lawfully issued.'" Maj. op. at 1417 (citing *Raney*, 717 F.2d at 1333). When an investor purchases securities he claims were issued in a manner contravening that assumption, an allegation that the securities were "not entitled" to be marketed will be sufficient to establish reliance under a fraud-created-the-market doctrine. In the instant case, however, Rosenthal alleged the bonds were "not entitled" to be marketed because their value was substantially less than represented, and not because their appearance on the market contravened the assumption that they were "lawfully issued." For this reason, Rosenthal's allegations are insufficient as a matter of law to entitle him to a presumption of reliance under the fraud-created-the-market doctrine.[3]

---

1. In its Response to Rosenthal's Motion for Reconsideration, Dean Witter notes that on October 1, 1996, the state court granted Rosenthal's Motion for Class Certification.

2. As set forth in my Memorandum Opinion and Order, I considered the fraud-created-the-market doctrine and Rosenthal's ability to show reliance in *dicta* to avoid any further delay in the resolution of this case. Mindful that an appeal to the Tenth Circuit on the statute of limitations issue was likely, I elected to consider the reliance issue to expedite matters were the Court of Appeals to reverse.

3. Again, the "fraud-created-the-market" doctrine, which permits a plaintiff to maintain an action under § 10(b) by proving that the defen-

dant's fraud allowed securities to come into and exist in the market that otherwise would have been unmarketable, is to be distinguished from the "fraud-on-the-market" doctrine, which recognizes that in an open and developed market, the price of a security reflects the appropriate synthesis of all relevant information regarding a security, including material misrepresentations. *Basic Inc. v. Levinson*, 485 U.S. 224, 241–45, 108 S.Ct. 978, 988–91, 99 L.Ed.2d 194 (1988), *applied in T.J. Raney*, 717 F.2d at 1332, *distinction discussed in Arena Land & Inv. Co., Inc. v. Petty*, 906 F.Supp. 1470, 1481 (D.Utah 1994), *aff'd*, 69 F.3d 547 (10th Cir.1995). Rosenthal's allegations invoke the "fraud-on-the-market" standard, which does not apply where, as here, there was no open or developed market for the bonds

As clarified above, I stand by my interpretation of *Raney* and reject the contention that it is inconsistent with the post-*Raney* decisions of other courts in this circuit. Accordingly,

The Motion to Reconsider is DENIED, and the Memorandum Opinion and Order issued on September 25, 1996 is REAFFIRMED.

against which to compare an allegedly fraudulent  price.